UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL POTTER and
BRETT BOYER,

      Plaintiffs, on behalf of themselves
      and all others similarly situated,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,
a Michigan non-profit corporation,

      Defendant.

Case No. 10-14981
Hon. Stephen J. Murphy, III

_____/

## **PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

      Plaintiffs, by their attorneys, Mantese Honigman Rossman and Williamson, P.C., and John J. Conway, P.C., having received Judgment in their favor, move this Court for an award of attorney's fees and costs pursuant to Fed. R. Civ. P. 23(h) and 54(d), LR 54.1 and 54.1.2, 28 U.S.C. 1920, and Section 502(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Concurrence in the relief requested was sought pursuant to Local Rule 7.1(a), by direct contact with defense counsel by e-mail and telephone, but concurrence was not obtained.

Respectfully Submitted,

**MANTESE HONIGMAN ROSSMAN**
**AND WILLIAMSON, P.C.**
Attorneys for Plaintiffs


 _s/ Gerard V. Mantese_____
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Brian M. Saxe (P70046)
bsaxe@manteselaw.com
1361 E. Big Beaver Rd
Troy, MI  48083 | (248) 457-9200

**JOHN J. CONWAY, P.C.**
Attorneys for Plaintiffs
John J. Conway (P56659)
john@johnjconway.com
26622 Woodward Avenue, Suite 225
Royal Oak, MI 48067 | (313) 961-6525


Dated:  May 1, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL POTTER and
BRETT BOYER,

      Plaintiffs, on behalf of themselves
      and all others similarly situated,

Case No. 10-14981
Hon. Stephen J. Murphy, III

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,
a Michigan non-profit corporation,

      Defendant.

_____/

**BRIEF IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS</u>**

## <u>QUESTION PRESENTED</u>

I.    Should this Court award Plaintiffs their attorney's fees and costs as the prevailing party in this ERISA action, where Blue Cross's actions reflect a high degree of culpability and bad faith, Blue Cross clearly has the ability to satisfy an award, an award would have an important deterrent effect on similar wrongful conduct by Blue Cross and other insurers, Plaintiffs sought and obtained an important common benefit and resolved significant legal questions regarding ERISA, and there was no merit to Blue Cross's position?

Plaintiffs answer:      "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

29 U.S.C. 1132(g)(1)

Fed. R. Civ. P. 23(h)

Fed. R. Civ. P. 54(d)(2)

*Caudill v. Sears Transition Pay Plan*, 2011 U.S. Dist. Lexis 45294 (E.D. Mich. Apr. 26, 2011)

*Delisle v. Sun Life Assur. Co. of Canada*, 2007 U.S. Dist. Lexis 93002 (E.D. Mich. Dec. 19, 2007)

*Gradisher v. Check Enforcement Unit*, 2003 U.S. Dist. Lexis 753 (W.D. Mich. Jan. 22, 2003)

*Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149 (2010)

*Hargrove v. EaglePicher Corp.*, 2012 U.S. Dist. Lexis 77726 (E.D. Mich. May 10, 2012)

*Heffernan v. Unum Life Ins. Co.*, 2004 U.S. App. Lexis 11836 (6th Cir. 2004)

*Kaiser Industries Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5 (E.D. Mich. 1970)

*Knop v Johnson*, 712 F. Supp. 571, 583 (W.D. Mich. 1989).

*Lowther v. AK Steel Corp.*, 2012 U.S. Dist. Lexis 181476 (S.D. Ohio Dec. 21, 2012)

*Minter v. Dazzo*, No. 10-cv-15018 (E.D. Mich. Apr. 17, 2013)

*Rankin v. Rots*, 2006 U.S. Dist. Lexis 45706 (E.D. Mich. June 28, 2006).

*State Department of Labor v. King*, 775 F.2d 666 (6th Cir. 1985).

*Van Horn v. Nationwide Property and Casualty Ins. Co.*, 436 Fed. Appx. 496 (6th Cir. 2011)

*West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914 (S.D. Ohio 2009)

**INTRODUCTION**

It is difficult to imagine a case more deserving of an award of attorney's fees and costs to the prevailing party. The Plaintiffs, a vulnerable class of children with autism, were illegally denied coverage for a life-changing treatment – Applied Behavior Analysis ("ABA") therapy – by Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") on the bad-faith basis that the treatment is allegedly "experimental." Plaintiffs' counsel, uniquely experienced among attorneys nationwide to handle this case, were retained on a contingency basis to challenge Blue Cross's illegal policy, which Blue Cross applied across-the-board to deny all ABA claims. (Doc. 35, pp. 5, 14-15). After over 2 and ½ years of vigorous litigation, Plaintiffs secured a resounding Judgment against Blue Cross, a total destruction of Blue Cross's policy on ABA therapy, and the overturning of all wrongfully denied claims. This Court's opinion made clear that Blue Cross's position was indeed frivolous – that it was arbitrary and capricious and suffered from fatal flaws, inconsistencies, ambiguities, excuses, and an utter lack of record support. (Doc. 125). Indeed, the merits against Blue Cross are so strong that Blue Cross did not even appeal.

Plaintiffs are entitled to an award of attorney's fees and costs under ERISA, 29 U.S.C. 1132(g), as the *King* factors overwhelmingly favor Plaintiffs. Plaintiffs' hourly rates of $400 to $500 for partners and $310 for associates is fair and reasonable, given the unique "market" at issue and the distinctive qualifications of Plaintiffs' counsel to successfully litigate this case. Plaintiffs' number of hours billed, 1,975.25, and costs incurred are fair and reasonable. (Exs. 1-3). Plaintiffs' counsel should be awarded attorney's fees of $752,234, statutory interest thereon, and costs of $9,464.52. Further, if necessary, Plaintiffs request that the Court enhance Plaintiffs' fees by a multiplier in order to fairly compensate Plaintiffs in the fee amount of $752,234.

**BACKGROUND**

Plaintiffs filed this ERISA action on December 16, 2010 (Doc. 1), seeking the benefits

they were denied and declaratory and injunctive relief, under 29 U.S.C. § 1132(a)(1)(B), (a)(3).

## I.    Class Certification and Class Member Information

Plaintiffs promptly moved for class certification on January 21, 2011.  (Docs. 10, 15, 24, 33).  The Court, through various orders, certified a class of individuals enrolled in or covered by a plan offered or administered by Blue Cross and governed by ERISA who were denied a claim for ABA therapy on the grounds that, pursuant to Blue Cross's 2010 Medical Policy, Blue Cross deems the treatment to be "experimental."  (Doc. 35, pp. 18-19; Doc. 60, p. 13; Doc. 124, p. 14).

Blue Cross filed a motion for reconsideration of the Court's initial class certification ruling, which the Court primarily denied.  (Doc. 60).  Blue Cross then filed a petition for appeal, challenging the class certification ruling, and the Sixth Circuit denied its petition.  (Doc. 67).

Meanwhile, in its certification rulings, this Court specifically ordered that "BCBS shall provide to Co-Lead Counsel, within 30 days of this order if possible, contact information for such class members as BCBS is able to identify through a thorough search of its records." (Doc. 35, p. 19; Doc. 60, p. 14).  However, Blue Cross did nothing for over 6 months.  It was not until after Plaintiffs filed a motion to hold Blue Cross in contempt of court (Doc. 75) that Blue Cross produced even a shred of information, and even then, it did not comply. While repeatedly claiming that its latest list "compris[ed] the universe of insureds that might include potential class members," Blue Cross did not provide mailing addresses initially, did not use all tools at its disposal to identify potential members, and removed all members of the prior Johns class and all participants in self-funded plans from its search results.  (Docs. 80, 86, 90).  Plaintiffs were forced to file several subsequent briefs to address Blue Cross's steadfast non-compliance.  (Id.).

One of these issues – Blue Cross's removal of participants in self-funded plans from its search results – was the subject of a later motion by Plaintiffs to clarify the class definition. (Doc. 113).  The Court granted Plaintiffs' motion, holding that "BCBS's arguments in opposition

are unconvincing" and its "argument lacks merit." (Doc. 124, pp. 12-13). Another of these issues – Blue Cross's failure to use all tools to identify class members and its claimed inability to do so – was addressed by the Court: "If this is BCBS's argument, it lacks merit. . . . [E]ach member of the class has already been identified at some point by BCBS as seeking coverage for ABA therapy, and informed of the reason for denial of his or her claim." (*Id.* at 5-6).

## II. Summary Disposition and Pretrial Procedures

Early in the case, Blue Cross moved to dismiss Plaintiff Potter's claim for an alleged failure to exhaust administrative remedies. (Doc. 14). Plaintiffs vigorously opposed the motion. (Docs. 16, 21, 29). The Court found Blue Cross's position contradictory and without merit:

> BCBS implicitly concedes that any further internal review will not yield a different result. [Blue Cross's] argument also concedes that the only time BCBS pays benefits for ABA treatment is when it is ordered to do so by the OFIR, further demonstrating that resort to BCBS's internal review mechanism never results in payment of benefits.

(Doc. 35, pp. 5-6). "BCBS has not identified one instance in which it has voluntarily paid benefits for ABA treatment," and its "argument is inapposite." (*Id.*).

Further, Plaintiffs' counsel attempted discovery; took the lead with the parties' joint discovery plan (Doc. 31) and pre-trial order (Doc. 69); and worked with experts and submitted Rule 26 disclosures under the scheduling order, despite not receiving the same from Blue Cross.

Plaintiffs also engaged in extensive briefing and oral argument on their motion for summary judgment (Doc. 36) and Blue Cross's motion to defer consideration thereof (Doc. 51) – both of which the Court denied on procedural grounds (Doc. 63), ordering the parties to instead compile and file cross-motions for judgment on a joint Administrative Record ("AR").

## III. Motions for Judgment on the Administrative Record

For nearly two months, Plaintiffs futilely tried to obtain Blue Cross's compliance with the Court's directive that the parties jointly compile the AR, but the defense refused to participate.

Ultimately, after several filings and motions – including Plaintiffs' motion (Doc. 74) to include additional documents in the AR that Blue Cross inexplicably omitted but which the Court "finds . . . are properly part of the administrative record" – the AR was finalized. (Doc. 77, pp. 2-3).

The parties then filed cross-motions for judgment on the AR, with Plaintiffs vigorously arguing that Blue Cross's policy of denying coverage for ABA therapy as "experimental or investigative" was arbitrary and capricious as a matter of law, even under the most deferential standard of ERISA review. (Docs. 84, 95).  In its opinion and order, the Court held, *inter alia*:

- "[T]he clinical studies cited in BCBS's policy statement **overwhelmingly conclude** that ABA is 'effective.'" (p. 11).

- "[T]he articles and studies cited **do not provide any** support for the claim that ABA. . .is effective for the treatment of some autism spectrum disorders but not others."  "[**N**]**one** of the articles and studies BCBS cites in its medical policy support that claim." (pp. 13, 18).

- "[W]hat the studies and commentary in the record have in common is the conclusion that ABA therapy produces **clinically proven** and statistically significant positive results for children with autism spectrum disorder." (p. 18).

- "BCBS's medical policy is internally **inconsistent**, **ambiguous**, and, most **fatally**, **not supported** by the evidence in the record." (p. 18).

- "The medical policy also states that there are 'not enough' long-term studies completed to determine ABA's effectiveness in treating autism. The phrase is **ambiguous** and, in any event, the policy itself **contradicts** that claim . . . .  The medical policy identifies, at most, one of those studies, and **dismisses it** because of the investigators' failure to randomize and the study's small sample size.  But, with respect to randomization, the studies cited in the medical policy state that randomized studies of ABA therapy are unavailable for ethical and practical reasons, and the single randomized study cited in the policy **confirmed** ABA's efficacy.  With respect to sample size, the sources cited in the medical policy show that clinical trials of ABA therapy uniformly involve relatively small sample sizes, and that, even with a statistical sample size of several hundred children, ABA is **clinically effective**." (pp. 18-19).

- "Most importantly, as a rule, the studies cited in the medical policy . . . **all show** statistically significant positive results from the treatment." (p. 19).

- "[I]n light of the medical policy's **ambiguity**, **inconsistency**, and **lack of record support**, the Court finds that BCBS's benefits determinations denying coverage on the basis of that policy were **arbitrary and capricious**." (p. 19).

(Doc. 125) (emphasis added).  The Court entered judgment against Blue Cross and in favor of Plaintiffs, declared that Blue Cross's characterization of ABA therapy as "experimental or investigative" was and is arbitrary and capricious, overturned all denials of benefits on that basis, remanded the class members' claims for readministration by Blue Cross, and ordered Blue Cross to provide notice to the class at Blue Cross's sole expense.  (Doc. 125, pp. 20-22; Doc. 126).

## ARGUMENT

### I.   Legal Authority for Award of Attorney's Fees and Costs to Plaintiffs

Section 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), provides:  "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."   Fed. R. Civ. P. 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law," upon Plaintiffs' motion under Rule 54(d)(2). Further, Rule 54(d)(1) provides that costs "should be allowed to the prevailing party," and 28 U.S.C. 1920 and the relevant case law provides that the Court may tax as costs various expenses.  "Here plaintiffs prevailed on the merits . . . and reasonable fees and costs and expenses for class counsel under Rule 23 and ERISA Section 502(g)(1), payable by defendant, are warranted."  *Hargrove v. EaglePicher Corp.*, 2012 U.S. Dist. Lexis 77726, at *2-3 (E.D. Mich. May 10, 2012).

### II.   Plaintiffs Should Be Awarded Their Attorney's Fees and Costs under ERISA

#### A.   Standard for Granting Request for Attorney's Fees and Costs

District courts have "broad discretion" to award attorney fees and costs in ERISA actions for parties who achieve "some degree of success on the merits."  *Hardt v. Reliance Std. Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010). *See Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854 (6th Cir. 2000). In exercising this discretion, the district court considers five factors:

1.   The degree of the opposing party's culpability or bad faith;
2.   The opposing party's ability to satisfy an award of attorney's fees;

3.   The deterrent effect of an award on other persons under similar circumstances;
4.   Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
5.   The relative merits of the parties' positions.

*State Department of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). The factors are to be applied flexibly, *see id.*, and "[n]o single factor is determinative[.]" *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-643 (6th Cir. 2006). *See, e.g., Heffernan v. Unum Life Ins. Co.*, 2004 U.S. App. Lexis 11836, at *28 (6th Cir. 2004) (party's ability to prove a majority of the factors, e.g. three of five, is sufficient for an attorney fee award). In this case, all five of the *King* factors **strongly** support an award of attorney's fees and costs to Plaintiffs from Blue Cross.

### 1.   <u>Blue Cross Demonstrated a High Degree of Culpability and Bad Faith</u>

Blue Cross's actions demonstrate a high degree of <u>both</u> culpability <u>and</u> bad faith, and this factor weighs heavily in Plaintiffs' favor. *See, e.g., West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 919 (S.D. Ohio 2009) ("Defendants were found to have violated ERISA in determining the amounts of the class members' lump-sum payments. The Court need not find bad faith to conclude that this factor weighs in Plaintiffs' favor.").

**Blue Cross's Reliance On and Defense of Its Frivolous Policy on ABA Therapy:**
Blue Cross's policy on ABA therapy and its reliance thereon reflect both culpability and a self-serving, deliberate attempt to avoid paying for <u>effective</u> ABA therapy to its plan participants.[1]

- This Court held that Blue Cross's policy was "internally inconsistent, ambiguous, and, most fatally, not supported by the evidence in the record." (Doc. 125, p. 18). The Court's detailed analysis reflects the fact that Blue Cross did not innocently get this wrong. The Court used phrases such as "overwhelmingly conclude," "all show," "confirmed," and "clinically effective" to describe the materials that Blue Cross willfully ignored, and phrases such as "do not provide any" and "none" to describe what Blue

---

[1] *See, e.g., Caudill v. Sears Transition Pay Plan*, 2011 U.S. Dist. Lexis 45294, at *34 (E.D. Mich. Apr. 26, 2011) (Bad faith factor "favors Plaintiffs" where "Defendants violated ERISA by arbitrarily and capriciously denying benefits to class members through use of a rigged formula under which claimants could never receive benefits and, consistent with that, interpretations of the plan's language in a manner under which class members could never receive benefits.").

Cross purported to rely upon.  This Court found that Blue Cross's own policy "contradicts" Blue Cross's arguments, and that Blue Cross "dismisses" reliable sources for invalid reasons.  (*Id.* at 10-20).  This Court's analysis allows only the conclusion that Blue Cross frivolously relied on a frivolous policy, to reach a pre-ordained conclusion.

- As described in Plaintiffs' motion for judgment briefing (Docs. 84, 95), Blue Cross deliberately ignored the actual Plan definition for determining an "experimental" service, which it claimed it was relying on (Doc. 92, p. 9), and attempted to replace the Plan's low standard of "adequate medical literature or clinical experience" with an entirely subjective standard of "enough long-term studies" that Blue Cross then abused.  By improperly hinging its position solely on the alleged "not enough long-term studies" basis, Blue Cross "opportunistically invoke[d] a self-serving . . . classification in order to avoid liability."  *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1261 (3d Cir. 1993).

- As described in Plaintiffs' motion for judgment briefing (Docs. 84, 95), Blue Cross intentionally ignored a veritable mountain of evidence[2] supporting ABA therapy which it was required to consult, under the Plan terms, and consulted a miniscule fraction of the sources required.  Blue Cross was required to evaluate, but ignored, *inter alia*, the reports of "multiple government agencies and professional organizations," which "concluded that 'ABA-based procedures represent best practices for individuals with autism'" and that ABA is "the standard means of treatment for children with autism and ASD."[3]  Indeed, Blue Cross could have easily reviewed many of these reports through a single online article from Johns Hopkins University, but Blue Cross egregiously chose not to do so.[4]

- Blue Cross took isolated snippets (from the sources it did review) egregiously out-of-context, in a deliberate effort to mislead the Court away from the actual findings of those sources, which is that ABA therapy is effective and is not experimental.  (Docs. 84, 95).

- Blue Cross badly misconstrued the sources it cited, and relied on bad faith bases in doing so – e.g., the facts that ABA does not cure every child with autism, ABA could be further researched, and/or ABA is not the only effective treatment for autism. (Docs. 84, 95).

- According to the detailed affidavit of Dr. Gina Green (Ex. 4) – a world-renowned and leading expert, researcher, author, and practitioner in behavior therapy, with decades of experience (Ex. 4, pp. 1-2; Ex. 5, ¶¶ 1-8) – who "thoroughly reviewed" Blue Cross's motion for judgment briefing and Blue Cross's ABA policy and the sources cited therein,

---

[2] These reports include, *inter alia*:  the Surgeon General of the United States, American Academy of Pediatrics, National Institute of Mental Health, National Institute of Child Health and Human Development, American Society of Child and Adolescent Psychiatry, American Psychological Association, Centers for Medicare and Medicaid Services, Center for Disease Control and Prevention, National Institute for Neurological Disorders and Stroke, National Academies Press, American Association on Mental Retardation, Association for Science in the Treatment of Autism, New York State Department of Health, California State Department of Developmental Services, Florida State Department of Children and Families, and Maine Administrators of Services for Children with Disabilities.  *See, e.g.*, *McHenry v. PacificSource Health Plans*, 679 F. Supp. 2d 1226, 1237-1238 (D. Or. 2010); *K.G. v. Dudek*, 2012 U.S. Dist. Lexis 59579, at *36-37 (S.D. Fla. Mar. 26, 2012).

[3] *McHenry*, *supra* at 1237-1238; *K.G.*, *supra* at *36-37.

[4] Available at http://www.kennedykrieger.org/kki_misc.jsp?pid=4761.

"BCBSM's review appears to have been deliberately conducted to reach a pre-ordained and unsupported conclusion that ABA therapy for ASD is experimental" (Ex. 4, p. 3).

- Dr. Gina Green's affidavit is a damning indictment of Blue Cross's ABA policy and the frivolous, bad faith positions that Blue Cross took in this litigation attempting to defend that policy, and Plaintiffs herein rely upon Dr. Green's affidavit in its entirety.  (Ex. 4).

- Among numerous other indictments of Blue Cross's conduct, Dr. Green states (Ex. 4):

  o "The BCBSM policy statement . . . makes it clear that the company ignored the facts about and products of behavior analytic research methods[.]" (p. 3).

  o "[T]he BCBSM review was conducted by non-behavior analysts who incorrectly excluded hundreds of controlled behavior analytic studies[.]"  (p. 3).

  o "BCBSM chose to ignore numerous independent reviews of the full range of scientific studies of ABA interventions for ASDs . . . .  BCBSM ignored at least two carefully conducted meta-analyses of data from studies of [ABA] . . . that were available when BCBSM issued its policy statement." (pp. 3-5).

  o "[T]he BCBSM determination [regarding ABA] . . . was based on a very skewed, incomplete, uninformed, and unscientific evaluation." (p. 5).

  o "BCBSM's misrepresentation of the research . . . shows that BCBSM is holding ABA treatment for ASD to a much different set of standards than it applies to many other treatments it funds." (p. 6).

  o "BCBSM has badly misconstrued several studies and reports regarding ABA therapy for ASDs.  BCBSM's misconstruction of the studies and reports appears to be a deliberate effort to avoid reaching the proper conclusion that ABA therapy is not experimental.  Some of the most glaring examples include . . . ." (p. 6).

  o Regarding Howard et al., "I am one of the authors of this study.  It is absolutely not the case that the main 'gist' of our study was that additional research on early intensive ABA treatment is necessary, as BCBSM falsely claims . . . .  BCBSM misconstrues our (the authors') statement" regarding further research and "falsely represents that statement as a condemnation of ABA treatment." (pp. 9-10).

  o Regarding the National Autism Center National Standards Project, "I was an advisor . . . as well as a reviewer for this project[.]"  BCBSM's mischaracterizations "could hardly be more inaccurate." (pp. 10-11).

The foregoing clearly reflects Blue Cross's culpability and bad faith. *See, e.g., Heffernan v. Unum Life Ins. Co.*, 2004 U.S. App. Lexis 11836, at *28 (6th Cir. 2004) ("UNUM ignored overwhelming evidence . . . and, instead denied [the] claim based on a theory that lacked

legitimate foundation. UNUM then sought to defend this theory with reference to isolated snippets from the record. . . . [T]he lower court did not abuse its discretion by awarding the plaintiff her attorney's fees and costs."); *Delisle v. Sun Life Assur. Co. of Canada*, 2007 U.S. Dist. Lexis 93002, at *6-7 (E.D. Mich. Dec. 19, 2007) ("In advancing an argument based on nonexistent requirements from the insurance policy, Defendant demonstrated bad faith."); *Crider v. Highmark Life Ins. Co*., 2006 U.S. Dist. Lexis 84564, at *5 (W.D. Mich. Nov. 21, 2006) (finding bad faith where defendant "ignored evidence or selectively relied on information").

**Blue Cross's claimed Need for Individualized Review despite It Denying All Claims:** In its mistreatment of beneficiaries' claims for ABA, in its seeking to dismiss Plaintiff Potter's case in favor of more administrative appeals, and in its filing of repeated, duplicative, and unsuccessful motions in this Court and a petition for appeal to the Sixth Circuit, Blue Cross steadfastly asserted that every claim for ABA therapy needed to be evaluated on an individual basis. (*See, e.g*., Doc. 92, pp. 18, 22, 25). This argument was made in bad faith. As the Court held, "BCBS . . . bases its decision solely on its policy determination that ABA is experimental in all of its applications." (Doc. 35, pp. 14-15). "The Court is not aware of any instance in which BCBS has voluntarily paid for ABA treatment." (*Id*. at 5). "Representatives of BCBS are unaware of any instances w[h]ere ABA treatment was considered a covered benefit." (*Id*. at 15).[5] Thus, while demanding individualized review, Blue Cross never even allowed for it.

**Blue Cross's Failure to Disclose Internal Documents Contradicting Its Policy:** As explained in Plaintiffs' motion for judgment briefing, Blue Cross omitted its 2005 and 2007 policy statements on ABA therapy (whether "draft" or not) from the AR, and those documents stated that ABA therapy is <u>not</u> experimental and that "[t]he effectiveness of applied behavior

_____

[5] (Citing deposition testimony of Blue Cross's appeals coordinator that she has "never" authorized payment for ABA). Indeed, Blue Cross recently stipulated that, based on its knowledge, it has never "overturned the denial of a claim" for ABA therapy "which was denied on the basis that ABA therapy is experimental and/or investigative following an internal appeal . . . by a health plan member." (Ex. 6).

analysis has been established." (Doc. 95, pp. 2-5). Blue Cross attempted to keep these documents from the Court's review, as the documents further show that Blue Cross does not believe its own policy, and that its current policy was issued in bad faith. Indeed, Blue Cross's own mental health director has testified that ABA is effective. (Ex. 7, pp. 66-67, 86).

**Blue Cross's Failure to Thoroughly Search Its Records and Produce Class Member Information:** As explained above, and explained in Plaintiffs' contempt briefing (Docs. 80, 86, 90), Blue Cross flagrantly disobeyed this Court's orders and egregiously did not produce a shred of class member information to Plaintiffs until over 6 months had passed and Plaintiffs filed a motion for contempt. Even then, Blue Cross misrepresented that it was providing all information to Plaintiffs, and continued to omit information on potential class members. Meanwhile, Blue Cross baldly claimed, without any documentary support or affidavit, that it "does not know how to – or simply cannot" identify any "potential class members" at all. (Doc. 105, p. 6). The Court recognized that this was nonsense: "If this is BCBS's argument, it lacks merit. . . . The class members *must* be identifiable; BCBS has identified them already." (Doc. 124, p. 5).

### 2. <u>Blue Cross Is Able to Satisfy an Award of Attorney's Fees</u>

Blue Cross is able to satisfy an award of fees. Blue Cross's 2012 financial statements show that it has over $12 billion in assets. (Ex. 8, p. 3). "Based on the economic strength and vitality of Defendant relative to the award sought, this condition is satisfied in Plaintiff's favor." *Delisle*, *supra* at *7. *See also Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1043 (S.D. Ohio 2001) ("[B]y awarding attorney's fees . . . this Court will help to further encourage meritorious litigation by reducing the disparity between the resources available to the parties.").

### 3. <u>An Award Will Have a Substantial Deterrent Effect</u>

The award will have a significant deterrent effect on Blue Cross and other insurers, which regularly issue coverage policies that take a uniform position on a given treatment, with claimed

support, for use in processing all claims.[6]  An award of fees here sends a clear message to insurers that they must ensure that their coverage policies are supported and not arbitrary and capricious.  *See, e.g.*, *Caudill*, *supra* at *35 ("The Court's ruling could certainly deter other plan administrators from utilizing such flawed methodologies in considering benefits.").

Further, Blue Cross issued a new policy statement effective March 1, 2012, which concludes that ABA therapy is "experimental," and which is based on almost the identical sources as the 2010 policy statement (with the sole exception of an updated report from Hayes, Inc).  (*See* Ex. 9).  An award of fees in this action would deter Blue Cross from continuing to arbitrarily and capriciously deny ABA claims, especially with regard to participants in self-funded plans not covered under Michigan's autism law.  *See, e.g.*, *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 919 (S.D. Ohio 2009) ("While the precise issue posed by this case . . . will likely not arise again after the effective date of the . . . Act, the fact that Plaintiffs have prevailed in this lengthy litigation certainly has a salutary effect. Moreover, the judgment has a preclusive effect in the follow-on litigation, involving claims by employees who received lump sum payments after the close of the class period in this case.").

Given the unique beneficiaries at issue – the most vulnerable, children with autism – and the catastrophic harm if benefits are denied – the lifelong loss of functioning for these children – it is of particular importance that Blue Cross and other insurers be sent a strong message that the arbitrary and capricious denial of ABA benefits will not be tolerated, and that they will pay for their wrongdoing.  These are beneficiaries who cannot defend or speak up for themselves, who seek nothing more than the opportunity to reach their potential with this effective treatment, and against whom Blue Cross brutally applied a baseless, uniform corporate policy, ripping this treatment from their grasps.  "There are certain windows of opportunity in normal development

---

[6] Blue Cross maintains hundreds of these coverage policies.  http://www.bcbsm.com/mprApp/mpr.do. The insurer CIGNA, for example, also does.  https://cignaforhcp.cigna. com/web/public/resourcesguest.

that if these windows are missed, they will be forever gone, at which point no matter how much therapy the child is exposed to, the damage has already been done and it is potentially irreparable[.]" *K.G. v. Dudek*, 864 F. Supp. 2d 1314, *40-41 (S.D. Fla. 2012).  The importance of a strong deterrent effect of an award of attorney's fees in this case cannot be understated.

**4.   Plaintiffs Sought to Confer a Common Benefit and to<br>Resolve Significant Legal Questions Regarding ERISA**

Plaintiffs both sought to confer – and obtained – a common benefit and Plaintiffs resolved significant legal questions regarding ERISA, and this factor strongly favors Plaintiffs.

Plaintiffs brought this case "as a class action   . . . on behalf of a class consisting of all persons who are participants in or beneficiaries of an employee benefit plan administered by or provided by Defendant and who have been denied coverage for ABA treatment for the CARE program, or other programs besides Beaumont's, or at home, to an insured person diagnosed with autism."  (Doc. 27, ¶ 88).  Plaintiffs promptly moved for class certification and vigorously supported certification before this Court and the Sixth Circuit.  Plaintiffs even filed a motion, when necessary, to ensure that the class – and the common benefit obtained – applied to participants in self-funded as well as underwritten plans.  Plaintiffs moved, and obtained, a class-wide judgment on behalf of all plan participants subjected to Blue Cross's policy – with the Court invaliding Blue Cross's policy, overturning all denials based on the policy, and ordering class-wide notice at Blue Cross's expense.  (Doc. 125, pp. 20-22; Doc. 126).

Plaintiffs sought to and resolved several significant questions under ERISA.  The decision is the first ever to grant a litigated class-action judgment on the merits to children with autism seeking coverage for ABA therapy under ERISA.  Indeed, while ERISA by default applies to the individual plan participant, *see* 29 U.S.C. 1132, Plaintiffs successfully navigated and resolved, class-wide, the legality of a singular coverage policy – applied by an insurer across plans and across participants.  The case involved a singular Administrative Record to resolve a

12

class-wide question regarding the denial of benefits for a singular treatment under 29 U.S.C. 1132. Plaintiffs also addressed the issue of including both self-funded and underwritten plan participants in a single class under ERISA. Further, Plaintiffs addressed the issues of class certification and damages under Rule 23(b)(2) and/or (3) in an ERISA action seeking benefits.

### 5.     There Was No Merit to Blue Cross's Position

The Court granted Plaintiffs' motion for judgment and denied Blue Cross's. (Doc. 125, pp. 20-22; Doc. 126). The Court found no merit to Blue Cross's position, and held that, *inter alia*, "in light of the medical policy's ambiguity, inconsistency, and lack of record support, . . . BCBS's benefits determinations denying coverage on the basis of that policy were arbitrary and capricious." (Doc. 125, p. 19). This factor weighs overwhelmingly in Plaintiffs' favor. *See, e.g.*, *Delisle*, *supra* at *8-9 ("Defendant acted arbitrarily and capriciously" and the opinions "establish the baseless stances Defendant took with respect to Plaintiff's claim."); *Caudill*, *supra* at *35 ("Certainly, this factor weighs in Plaintiffs' favor, as Plaintiffs prevailed in this matter when the Court . . . found that Defendants violated ERISA by arbitrarily and capriciously denying benefits to class members through use of a rigged formula [and] . . . interpretations of the plan's language in a manner under which class members could never receive benefits.").

### III.     Plaintiffs' Attorney's Fees Are Reasonable

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551-52 (6th Cir. 2008). In suits, such as ERISA cases, where Congress has expressed a desire to encourage their filing, the proportionality of damages compared to attorney's fees is not to be considered. *See Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Racing*, 46 F.3d 1392, 1400 (6th Cir. 1995).

A.    **The Hourly Rates Are Reasonable for This Case**

To ascertain the appropriate hourly rate, Courts "are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Hargrove v. EaglePicher Corp.*, 2012 U.S. Dist. Lexis 77726, at *3 (E.D. Mich. May 10, 2012) (citing cases). The analysis requires consideration of experience, specialization, effort, and performance, and setting rates sufficient to ensure that class counsel are "fairly compensated for the amount of work done and the results achieved." *Rankin v. Rots*, 2006 U.S. Dist. Lexis 45706, at *1 (E.D. Mich. June 28, 2006). Further:

> [T]here is a <u>public interest in ensuring that attorneys willing to represent employees in ERISA litigation</u> are adequately paid so that they and others like them will continue to take on such cases. <u>Adequately compensatory fee awards in successful class actions promote private enforcement of and compliance with important areas of federal law. . . . An ERISA case involves highly-specialized and complex areas of law.</u>

*Rankin*, *supra* at *1-3 (emphasis added). *See also Hargrove*, *supra* at *4.

Plaintiffs submit an hourly rate of $400 to $500 for partners, $310 for associates, and $120 for legal assistants. (Exs. 1, 3, 23-24). For high-caliber and uniquely experienced attorneys successfully practicing in the specialized and complex area of ERISA class actions seeking insurance coverage for ABA therapy for autistic children, these rates are fair and reasonable.

1.    **The Rate Surveys Support Plaintiffs' Hourly Rates**

According to the State Bar of Michigan's 2010 Billing Rate Report, the average 95th percentile hourly rate for managing partners is $500 and for associates is $310. (Ex. 10, p. 7). Plaintiffs' counsel's efforts, qualifications, and expertise, as described herein, justify hourly rates at the 95th percentile of attorneys reflected in the State Bar of Michigan's report. Further, according to the State Bar's report, the average 95th percentile hourly rate for attorneys practicing Consumer Law is $515 and for attorneys practicing Insurance Law is $500. (*Id.* at 10). These areas of practice are the most pertinent to this case. (*See id.*). Plaintiffs' counsel are practicing

Consumer Law/Insurance Law in the class action context, with a highly specialized focus, thus justifying hourly rates at the 95th percentile of attorneys billing in these areas of practice.

Meanwhile, according to the National Law Journal's 2012 Billing Survey, the median hourly rate for a partner is $501 and for an associate is $317. (Ex. 11). According to the ABA Journal, the average hourly rate for partners and senior counsel is even higher, at $661. (Ex. 12).

## 2.    The Case Law Supports Plaintiffs' Hourly Rates

The case law strongly supports Plaintiffs' rates. *See, e.g., West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 657 F. Supp. 2d 914, 919, 933-935 (S.D. Ohio 2009) (In ERISA class action, where Plaintiffs' counsel were "highly experienced ERISA specialists who practice in the national market" and case "involved specialized knowledge of ERISA . . . as well as responsibilities to the entire certified class," court applied hourly rate of $497 for senior attorneys.); *Lowther v. AK Steel Corp.*, 2012 U.S. Dist. Lexis 181476, at *14-16 (S.D. Ohio Dec. 21, 2012) (In ERISA class action, "hourly rates of $500/hour may be applied for the senior attorneys . . . and rates between $100 and $450/hour may be applied for other attorneys and staff involved in the case," as "the rates requested are within the range of rates approved by courts in other actions[.]"). "Recent fee awards in ERISA retiree health benefit class actions in the Eastern District of Michigan[7] approved rates of $475 per hour for lead and experienced class counsel and $125 per hour for law clerks and paralegals." *Hargrove*, *supra* at *4-5 ("Based on the record, the Court finds that a rate of $475 per hour for class counsel [and $125 for paralegals] . . . is reasonable and warranted by his qualifications and experience."). Further, Plaintiffs' rates are well within the reasonable range for experienced attorneys practicing in a specialized field.[8]

---

[7] *See Leonhardt, et al. v. ArvinMeritor, Inc, et al.*, 581 F. Supp. 2d 818 E.D. Mich. 2008); *Reese v. CNH Global N.V.*, 2011 U.S. Dist. Lexis 70607 (E.D. Mich. June 30, 2011); *UAW v. General Motors Corp.*, 2008 U.S. Dist. Lexis 92590 (E.D. Mich. July 31, 2008); *UAW v. Ford Motor Co.*, No. 07-cv-14845 (E.D. Mich. July 7, 2008); *UAW v. Chrysler, LLC*, No. 07-cv-14310 (E.D. Mich. May 16, 2008).

[8] *See Auto. Tech Intl., Inc. v. Siemens VDO Auto. Corp.*, 744 F. Supp. 2d 646 (E.D. Mich. 2010) ($695 per

Indeed, in a similar, recent class action seeking Medicaid coverage for ABA therapy for children with autism, *Minter v. Dazzo*, No. 10-cv-15018 (E.D. Mich. Apr. 17, 2013), the plaintiffs – represented by the same Plaintiffs' counsel as this case – were preliminarily awarded attorney's fees and costs by this Court in the amount of $700,000. (Ex. 13, p. 2). Given that the plaintiffs in *Minter* submitted approximately 1,600 hours (*see Minter* Doc. 92), the hourly rate awarded to them amounts to $437 (accounting for both partner and associate time). Plaintiffs' requested rates in this case would amount to an award very similar to that just ordered in *Minter*.

### 3.    The Declarations Support Plaintiffs' Hourly Rates

Plaintiffs submit several affidavits of reputable Michigan attorneys attesting to the reasonableness of Plaintiffs' hourly rates and the qualifications and specialized representation of Plaintiff's counsel that was required to successfully litigate this ERISA class action. (Exs. 14-19). The affiants include a former State Bar of Michigan President, two retired circuit court judges, and three highly experienced litigators. (*Id.*). The affiants have extensive experience with class actions and ERISA cases. For example, former State Bar of Michigan President Jon Muth has been an attorney for nearly 42 years, has represented clients in ERISA litigation and class actions, has for the past 17 years helped settle a number of ERISA class actions as a mediator, and states that, in his knowledge and experience, "hourly rates of $500 per hour for lead litigation partners and $310 per hour for senior associates are within the range of current anticipated compensation for highly qualified attorneys practicing in the specialized field of complex commercial litigation, including class actions seeking insurance benefits for autism therapy." (Ex. 14). All of the other affiants provide similar statements in support.[9]

---

hour); *Robert Bosch LLC v. A.B.S. Power Brake, Inc.*, 2012 U.S. Dist. Lexis 108128 (E.D. Mich. Aug. 2, 2012) ($600); *iLOR, LLC v. Google, Inc.*, 2009 U.S. Dist. Lexis 98584 (E.D. Ky. Oct. 15, 2009) ($764.75 reasonable "when considered in light of the national and specialty aspects of the work involved in this litigation"); *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ($600).

[9] Plaintiffs also submit declarations of two Washington, D.C. attorneys from another class action for

Steven Goren, a 29-year veteran litigator with extensive class action experience, attests:

[This] was a highly complex case that required significant investment and risk to take on a contingent basis. It was also an important case, having a very significant, life-long impact on the lives of autistic children and their families. . . . I am aware and daunted by the amount of factual knowledge and elevated burden of proof needed to prove that Blue Cross acted improperly in labeling Applied Behavior Analysis (ABA) therapy . . . experimental. . . . I have the highest respect for the attorneys who litigated for the plaintiff. (Ex. 17, pp. 1-2).

Experts in the field who have worked closely with Plaintiffs' counsel likewise provide strong statements of support. Leading autism therapy expert Dr. Gina Green attests, *inter alia*:

- "[F]amilies seeking insurance coverage for ABA will often be unable to obtain such coverage unless they bring a lawsuit against the insurance provider. For such families, it is important to have lawyers who are experts in healthcare and insurance issues, are familiar with the science of ABA therapy, and are willing to take the risk of not being compensated by representing such families on a contingency basis."

- Plaintiff's counsel "have shown an expertise in all aspects of insurance coverage litigation for ABA therapy," and "have shown an impressive knowledge of ABA therapy and are well versed in the medical literature relating to ABA therapy. Their preparation, knowledge of the facts and law, and thoroughness of advocacy have been impressive."

- Plaintiff's counsel "have advocated on behalf of the autism community seeking health benefits in US courts more often than anyone else in the country and with enormous success. I am not aware of any other firms that have taken such a leading role in litigating on behalf of families to obtain insurance coverage for ABA[.]"

- Plaintiff's counsel "have been willing to take the risk of not being compensated by pursuing these cases on a contingency basis," and "have bestowed an unparalleled benefit on children with autism."

(Ex. 5, ¶¶ 11-18). Likewise, Dr. Lori Warner, director of Beaumont Hospital's HOPE Center, states that Plaintiffs' counsel "have been at the forefront in advocating and litigating for families of children with autism denied coverage for ABA treatment," have themselves visited the Center and observed ABA treatment, and have educated themselves regarding ABA therapy. (Ex. 22).

Plaintiffs' counsel are national leaders in all aspects of insurance coverage litigation

---

autism therapy litigated by Plaintiffs' counsel, wherein the affiants state that, "[f]or attorneys practicing in the specialized field of class actions involving insurance coverage for ABA therapy, rates of $650 per hour for partners and $375 per hour for associates are fair and reasonable." (Exs. 20-21).

relating to ABA therapy and specialize in class actions. Plaintiffs' counsel have submitted their own affidavits, curriculum vitaes, and a listing of selected experience in support thereof. (Exs. 23-25). This class action was not prosecuted by the "median" attorney, but by experts in the field of autism insurance litigation. As analogously stated by the Western District:

> [They] are nationally recognized experts in a complex field of federal practice. They are by no means the "median" member of the bar, and their hourly rates should be adjusted upward to reflect both their specialization and the extremely high quality of the representation they provided to the plaintiff class. Such an adjustment is not simply reasonable, it is mandated by equity and fairness.

*Knop v Johnson*, 712 F. Supp. 571, 583 (W.D. Mich. 1989). "Few law firms" nationwide "are capable of handling" this complex class action. *See Will v. Gen'l Dynamics Corp.*, 2010 U.S. Dist. Lexis 123349, at *3 (S.D. Ill. Nov. 22, 2010) ("reasonable blended rate for attorney time of $514.60 per hour, including $800 per hour for hours spent by senior partners"). There is an urgent demand for attorney services to satisfy the unmet needs of otherwise powerless children seeking ABA coverage, and an extremely limited supply of qualified attorneys to fill this need. Further, the adversary system only functions if poorer litigants are empowered by sufficient fee shifting to compete with their adversary on an equal footing. *See Kinney v. Rothchild*, 678 F.2d 658 (6th Cir. 1982). Plaintiffs' counsel's rates are reasonable and should be approved.

**B.     The Number of Hours Billed by Plaintiffs Is Reasonable**

Plaintiffs' counsel have spent a total of 1,975.25 hours prosecuting this action. (Ex. 1; Ex. 3). These fees were necessarily and reasonably incurred and were actually performed by Plaintiffs' counsel. (Exs. 23-24, pp. 2-3). Plaintiffs vigorously litigated this case for 2 and ½ years, with significant motion practice on a variety of substantive and procedural issues, appellate practice, exhaustive research on complex legal issues, and careful review of hundreds of pages of scientific materials. All of the time expended was reasonable and necessary.

Further, Plaintiffs request that an *additional* 40 hours (calculated at an average

partner/associate rate) be added to Plaintiffs' total hours, to account for future attorney time that will be necessary to, *inter alia*, complete work on the attorney's fee issues, enforce Blue Cross's compliance with the Judgment, address class notice issues, and handle various continuing obligations to the class.[10]  If Plaintiffs are not awarded fees for these additional hours, Plaintiffs request permission to file supplemental petitions for additional hours as they are incurred.[11]

Thus, Plaintiffs seek a total fee award of $752,234, accounting for 2,015.25 total hours (including the added 40) at an hourly rate of $400 to $500 for partners and $310 for associates.

## IV.    If Necessary, Plaintiffs' Attorney's Fees Should Be Enhanced By a Multiplier

If the Court finds Plaintiffs' lodestar amount to be less than $752,234, Plaintiffs request that the Court enhance Plaintiffs' lodestar by a multiplier sufficient to compensate for any amount by which the lodestar is less than $752,234.[12]  *See Van Horn v. Nationwide Property and Casualty Ins. Co.*, 436 Fed. Appx. 496, 499 (6th Cir. 2011).  Further, if the Court would benefit from further briefing on this issue, Plaintiffs request that they be permitted to submit the same.

## V.    Plaintiffs Should Be Awarded Interest on their Attorney's Fees

Plaintiffs also request an award of interest on a forthcoming judgment for attorney's fees,

---

[10] *See, e.g., Caudill, supra* at *53 (granting class counsel's request for 34.8 additional hours spent on subsequent tasks); *Eppard v. ViaQuest, Inc.*, 2010 U.S. Dist. Lexis 122769, at *14-17 (S.D. Ohio Nov. 2, 2010) (awarding fees to class counsel for additional "anticipated future time"); *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. Lexis 18838, at *7-9 (S.D. Ohio Feb. 28, 2008) (granting enhancement to fee award because, inter alia, "class counsels' continuing obligations to the class").

[11] *See, e.g., Hargrove, supra* at *6; *Int'l Union v. Ford Motor Co.*, 2007 U.S. Dist. Lexis 94344, at *3 (E.D. Mich. Dec. 27, 2007).

[12] In *Caudill*, for example, an ERISA class action where the plaintiffs left enhancement to the Court's discretion, this Court applied a 50% enhancement of the lodestar amount "to ensure reasonable compensation," bringing the total fee award to $758,016 and nearly back in line with the plaintiffs' original fee request. *Supra* at *31, 54-59.  Reasons for enhancement in *Caudill* also apply to the instant case, including, *inter alia*, that "Plaintiffs' counsel 'did an excellent job' in this matter, prevailing in what has been lengthy and complex ERISA litigation," "Counsel have submitted declarations detailing their vast experience, reputation, and ample ability," and "[t]he novelty and difficulty of the questions involved in this matter also justify an enhancement, as does the time and labor required." *Id.  See also, e.g., Lowther v. AK Steel Corp.*, 2012 U.S. Dist. Lexis 181476, at *17-19 (S.D. Ohio Dec. 21, 2012) (ERISA class action, citing over a dozen multiplier cases, and finding a multiplier of 3.06 to be "very acceptable under the facts and circumstances of this case").

under 28 U.S.C. 1961(a), accruing from the date of judgment for such fees.  *See also, e.g.*, *Caudill*, *supra* at \*61, 65 ("[I]nterest on the attorney fees award shall begin to accrue from the date of this order.").  The post-judgment interest rate under the statute is currently .12%.

## VI.   Plaintiffs' Costs Are Reasonable

Plaintiffs' costs – to which they are entitled under Fed. R. Civ. P. 54(d), 28 U.S.C. 1920, and 29 U.S.C. 1132(g) for the reasons above – amount to $9,464.52 (Exs. 2-3).  *See, e.g.*, *Kaiser Industries Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5, 7-8 (E.D. Mich. 1970) ("As a general proposition, the prevailing party is entitled to costs in the District Court[.]").  A court may grant an award that includes expenses not enumerated in 28 U.S.C. 1920 provided that they are the type of expenses that an attorney would normally pass along and bill separately to a client. *Gradisher v. Check Enforcement Unit*, 2003 U.S. Dist. Lexis 753, at \*24-28 (W.D. Mich. Jan. 22, 2003).  All of Plaintiffs' costs are recoverable under federal law and should be awarded.

## CONCLUSION AND RELIEF REQUESTED

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and award them attorney's fees in the amount of $752,234, with interest accruing at a rate of .12% or the current statutory rate, and costs in the amount of $9,464.52.

Respectfully Submitted,

**MANTESE HONIGMAN ROSSMAN**
**AND WILLIAMSON, P.C.**
Attorneys for Plaintiffs

  s/ Gerard V. Mantese          
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Brian M. Saxe (P70046)
bsaxe@manteselaw.com
1361 E. Big Beaver Rd
Troy, MI  48083 | (248) 457-9200

**JOHN J. CONWAY, P.C.**
Attorneys for Plaintiffs
John J. Conway (P56659)
john@johnjconway.com
26622 Woodward Avenue, Suite 225
Royal Oak, MI 48067 | (313) 961-6525


Dated:  May 1, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2013, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

 s/Jennifer L. Brennan
Mantese Honigman Rossman
and Williamson, P.C.
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200
jbrennan@manteselaw.com
