UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL POTTER and BRETT BOYER,            Case No. 10-14981

                Plaintiffs,            Stephen J. Murphy, III
v.                                        United States District Judge

BLUE CROSS BLUE SHIELD OF MICHIGAN, Michael Hluchaniuk
                United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**PLAINTIFFS' MOTION FOR ATTORNEY FEES (Dkt. 128)**

## I.    PROCEDURAL HISTORY

Plaintiffs filed this putative class action on December 16, 2010, seeking

benefits they were allegedly denied for Applied Behavior Analysis ("ABA")

therapy for autism, as well as declaratory and injunctive relief. (Dkt. 1).  The Court

subsequently certified a class of individuals enrolled in or covered by a plan

offered or administered by defendant Blue Cross Blue Shield of Michigan

("BCBS") and governed by ERISA who were denied a claim for ABA therapy on

the grounds that, pursuant to BCBS's 2010 Medical Policy, BCBS deemed the

treatment to be "experimental."  (Dkt. 35, 60, 124).  On March 30, 2013, the Court

entered judgment against BCBS and in favor of plaintiffs, declared that BCBS's

characterization of ABA therapy as "experimental or investigative," as applied to

the claims of the class members, was and is arbitrary and capricious, overturned all denials of benefits on that basis, ordered that the class members' claims for coverage of ABA therapy be remanded to BCBS for re-administration, and ordered BCBS to provide notice to the class at BCBS's sole expense. (Dkt. 125, 126).

On May 1, 2013, plaintiffs filed the instant motion for attorney's fees and costs pursuant to § 502(g)(1) of ERISA, Fed. R. Civ. P. 23(h) and 54(d)(2), L.R. 54.1 and 54.1.2, and 28 U.S.C. § 1920. (Dkt. 128). BCBS filed a response in opposition to plaintiffs' motion on May 20, 2013. (Dkt. 130). Plaintiffs filed a reply brief on June 6, 2013 (Dkt. 136), and BCBS filed a sur-reply brief on October 15, 2013. (Dkt. 148). The parties filed separate "Joint" Statements of Resolved and Unresolved Issues on October 16, 2013. (Dkt. 150, 151). Pursuant to notice, a hearing was held before the undersigned on October 23, 2013 (Dkt. 141), and plaintiffs' motion was taken under advisement. The parties subsequently filed several "notices" of supplemental authority, as well as response and reply briefs regarding those notices. (Dkt. 160-66). This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiffs' motion for attorney's fees and costs be **GRANTED in part,** as set forth below.

## II.    ANALYSIS AND CONCLUSIONS

### A.    Plaintiff Has Established the Requisite Degree of Success on the Merits to Warrant an Award of Attorney Fees and Costs under Section 502(g)(1) of ERISA

#### 1.    Legal standard

Section 502(g)(1) of ERISA provides: "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1); *see also* Fed. R. Civ. P. 23(h) (court may award fees and nontaxable costs in a certified class action).  The United States Supreme Court has held that a claimant need not be a "prevailing party" to be eligible for attorney's fees under ERISA's fee-shifting statute; rather, the court may award fees and costs under the statute if the party requesting the award shows he or she obtained "some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010).  The Court explained that "[a] claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue."  *Id.* at 255.  The *Hardt* Court determined that, based on the facts of that case, the plaintiff's success in persuading the court to remand the plan

3

administrator's decision was "far more than" a trivial success on the merits or purely procedural victory. *Id.* Similarly, "[i]n the Sixth Circuit, a remand, alone, constitutes 'some success on the merits' that makes an award of attorney's fees and costs available under § 1132(g)(1)." *Thies v. Life Ins. Co. of N. Am.*, 839 F. Supp.2d 886, 890 (W.D. Ky. 2012) (citing *McKay v. Reliance Standard Life Ins. Co.*, 428 Fed. Appx. 537, 547 (6th Cir. 2011) and collecting cases); *see also Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 2010 WL 3855239, at *4 (E.D. Mich. Sept. 28, 2010) ("conclud[ing] that it is appropriate to rule on Plaintiff's Motion for Attorney Fees even though Plaintiff has presently only secured a remand to the Plan Administrator.").

However, "[e]ven under this more relaxed threshold for eligibility, [plaintiffs] must demonstrate [their] entitlement to attorney's fees." *Geiger v. Pfizer, Inc.*, — Fed. Appx. —, 2013 WL 5911993, at *2 (6th Cir. Nov. 5, 2013) (citing *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936 (6th Cir. 1996) ("[O]ur circuit recognizes no presumption as to whether attorney's fees will be awarded" to the prevailing party in an ERISA action)). In exercising its discretion as to whether to award fees under § 1132(g), this Court is to consider the five factors established by the Sixth Circuit in *Secretary of Department of Labor v. King*, 775 F.2d 666 (6th Cir. 1985):

> (1) the degree of the opposing party's culpability or bad

> faith; (2) the opposing party's ability to satisfy an award
> of attorney's fees; (3) the deterrent effect of an award on
> other persons under similar circumstances; (4) whether
> the party requesting fees sought to confer a common
> benefit on all participants and beneficiaries of an ERISA
> plan or to resolve a significant legal question regarding
> ERISA; and (5) the relative merits of the parties'
> positions.

*Id.* at 669. These *King* factors are not statutory and thus should be viewed

flexibly, *see id.*, and "[n]o single factor is determinative." *Moon v. Unum*

*Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006).

## 2. Threshold determination

First, there can be no question under *Hardt* and Sixth Circuit precedent that

plaintiffs have achieved "some success on the merits." Plaintiffs were able to

persuade the Court that the plan administrator's characterization of ABA therapy

as "experimental or investigative," as applied to the claims of the class members,

was and is arbitrary and capricious and that it should not be upheld under ERISA.

The Court reversed the plan administrator's decision and ordered that the class

members' claims for coverage of ABA therapy be remanded to BCBS for re-

administration consistent with the Court's Opinion and Order. The Court stated

that plaintiffs' claims for coverage were payable, other than those claims denied

for other "specific valid reasons, plainly having nothing to do with the

experimental/investigative exclusion," such as claims denied because they are

5

time-barred.  (Dkt. 125).  The undersigned disagrees with BCBS's assertion, raised

for the first time in its sur-reply brief, that an award of fees and costs is premature

because the parties do not know the number of class members and how many of

those members are entitled to relief.  As explained above, courts within the Sixth

Circuit have consistently held that a remand to the plan administrator constitutes a

substantial success on the merits.  *See*, *e.g.*, *Thies*, 839 F. Supp.2d at 890 (W.D.

Ky. 2012); *Blajei*, 2010 WL 3855239, at *4 (collecting cases holding that a

remand alone constitutes a substantial level of success on the merits).  Thus, under

*Hardt* and *McKay*, plaintiffs have satisfied the threshold requirement of achieving

"some degree of success," which allows the Court to exercise its discretion in

ruling on plaintiffs' request for attorney fees.

### 3.    The five *King* factors

Once a court determines that attorney's fees are available because a party

has achieved "some degree of success on the merits," the court looks to the five

*King* factors to help determine whether or not to award fees.  *See Ciaramitaro v.*

*Unum Life Ins. Co. of Am.*, 521 Fed. Appx. 430, 437 (6th Cir. 2013) ("[W]hile the

five-factor *King* test is not required [after *Hardt*], it still has vitality in helping

courts determine whether or not to award fees to a party that achieves some degree

of success on the merits.") (citations omitted).  Plaintiffs argue that they meet all

five of the *King* factors.  Defendant BCBS disputes that plaintiffs satisfy the first,

third and fifth factors, and asserts that plaintiffs' motion for attorney's fees should be denied.[1]

The first *King* factor is the degree of culpability or bad faith of the opposing party. Plaintiffs argue that BCBS's reliance on and defense of its unsupported policy on ABA therapy reflects both culpability and a self-serving, deliberate attempt to avoid paying for effective ABA therapy to its plan participants. Plaintiffs assert that the Court has held that BCBS's policy was "internally inconsistent, ambiguous, and, most fatally, not supported by the evidence in the record." (Dkt. 125, p. 18). BCBS responds that an arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith. BCBS asserts that its 2010 Medical Policy Statement was the result of critical review, and although the Court disagreed with the conclusion in the 2010 Statement, nowhere in its opinion did this Court hold that BCBS acted in bad faith.

In remanding the benefits determination to BCBS, this Court determined that BCBS's denial of benefits was arbitrary and capricious. The undersigned notes that BCBS correctly states that "an arbitrary and capricious denial of benefits does not necessarily indicate culpability or bad faith." *Heffernan v.*

---

[1] BCBS does not dispute the remaining two *King* factors–(2) BCBS's ability to satisfy the award and (4) the existence of a common benefit or resolution of a significant ERISA legal question–and the undersigned suggests that these factors favor an award of attorney's fees and costs to plaintiffs. BCBS concedes that it has the ability to satisfy the award, and plaintiffs sought and obtained a benefit to a class of participants for coverage for ABA therapy under the 2010 Statement.

*UNUM Life Ins. Co. of Am.*, 101 Fed. Appx. 99, 109 (6th Cir. 2004). However, as the Sixth Circuit subsequently explained in *Gaeth v. Hartford Life Insurance Company*, 538 F.3d 524 (6th Cir. 2008), "the court's case law by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." *Id.* at 530 (emphasis in original, citing *Moon*, 461 F.3d at 644-45 (finding that the plan administrator was culpable for the same reason that its rejection of a disability claim was arbitrary and capricious–that is, it adopted wholesale the opinion of a physician in its employ "who based his findings on selective information in the administrative record and did not examine [the claimant]")). Moreover, it is unnecessary to find bad faith to conclude that this factor favors an award of attorney's fees. "Rather, if a plan administrator's conduct is "culpable", i.e., blameworthy, this factor favors an award of fees." *Blajei*, 2010 WL 3855239, at *5 (citations omitted). In finding that BCBS's denial of benefits was arbitrary and capricious, the Court noted that: (1) BCBS's 2010 Medical Policy concedes that ABA therapy is "safe," (2) the clinical studies cited in BCBS's policy statement overwhelmingly conclude that ABA is "effective" and make no distinction between types of autism spectrum disorder, contrary to the assertions in the policy statement, (3) BCBS's obligation to pay approved claims itself (in plans administered and funded by BCBS) shows that it is subject to a conflict of interest,

8

and (4) "BCBS's medical policy is internally inconsistent, ambiguous, and, most fatally, not supported by the evidence in the record." (Dkt. 125). In light of these findings, the undersigned suggests that BCBS acted with culpability in denying benefits for ABA therapy. *See McKay*, 428 Fed. Appx. at 546 (affirming district court's determination that the defendant's "failure to conduct a 'full and fair investigation' into [the plaintiff's] claims, including its failure to consider the correct policy, amounted to arbitrary and capricious conduct that rose to the level of culpability required for a fee award" such that the first factor weighed heavily in the plaintiff's failure); *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC Gp. Health Benefit Plan*, 581 F.3d 355, 377 (6th Cir. 2009) ("Where a plan administrator engages in an inadequate review of the beneficiary's claim or otherwise acted improperly in denying benefit, [courts] have found that attorney fees are appropriate."); *Heffernan*, 101 Fed. Appx. at 109 ("UNUM ignored overwhelming evidence . . . and, instead denied [the] claim based on a theory that lacked legitimate foundation. UNUM then sought to defend this theory with reference to isolated snippets from the record. . . . [T]he lower court did not abuse its discretion by awarding the plaintiff her attorney's fees and costs."); *Potter v. Sabic Innovative Plastics US, LLC*, 2011 WL 4852334, at *5 (S.D. Ohio Oct. 13, 2011) ("Defendant was culpable for making a benefits determination that was unsupported by competent evidence. In addition, the plan administrator failed to

consider or acknowledge the Social Security Administration's award of benefits to Mr. Potter.").

As to the third *King* factor–the deterrent effect of an award of attorney's fees on other persons under similar circumstances–plaintiffs argue that an award of fees here sends a clear message to insurers that they must ensure that their coverage policies are properly supported and not arbitrary and capricious. BCBS contends that an award of fees is not necessary to deter future conduct in light of the fact that Michigan now mandates broad ABA coverage. Plaintiffs respond that the Michigan mandate does not apply to self-funded plans, and thus BCBS could continue to deny ABA coverage to all self-funded plan participants, but for the Court's ruling in this case. "The key question in analyzing this third factor is . . . whether the fee award would have a deterrent effect *on other plan administrators*." *Gaeth*, 538 F.3d at 532 (emphasis added). The undersigned suggests that an imposition of attorney's fees and costs here will serve to deter other plan administrators from implementing internally inconsistent and ambiguous policies that are not properly supported by the record evidence, and thus the third factor weighs in favor of the plaintiffs. *See Caudill v. Sears Transition Pay Plan*, 2011 WL 1595044, at *11 (E.D. Mich. Apr. 26, 2011) ("The Court's ruling could certainly deter other plan administrators from utilizing such flawed methodologies in considering benefits."); *Blajei*, 2010 WL 3855239, at *7

10

(finding the facts of the case were not so unique that they fail to serve any deterrence value to other insurance companies).

Finally, the fifth *King* factor addresses the relative merits of the parties' positions, which requires a consideration of the relative strength of the parties' positions. BCBS argues that plaintiffs' motion should be denied because, it contends, plaintiffs achieved only partial success in that the Court's decision was narrower in scope than what plaintiffs' initially sought. Specifically, plaintiffs stipulated to the removal of the subclass of individuals deterred from making a claim for ABA therapy by BCBS's policy, and the Court narrowed the class to only those whose claims were denied on the basis of the 2010 Statement. (Dkt. 124). Plaintiffs respond that they have achieved the first ever litigated class judgment on the merits providing autism benefits under ERISA, and that the Court modified the class to focus on the 2010-2012 policy statement and that plaintiffs agreed to exclude the "deterreds" subclass in no way lessens plaintiffs' entitlement to fees and costs. The undersigned notes that plaintiffs here have overcome the arbitrary and capricious standard of review, which is highly deferential to the insurer, and "a number of district courts in the Sixth Circuit have found that where a plaintiff overcomes an arbitrary and capricious standard of review, and obtains a remand to the plan administrator, the plaintiff's position had more merit." *Blajei*, 2010 WL 3855239, at *8 (collecting cases); *see also Thies*, 839 F. Supp.2d at 894

11

("Based on the decision to remand the case, the Court finds that the Plaintiffs' case is the one having more relative merit," even though there has not been a final decision by the insurance company on remand).  In remanding the benefits determination to BCBS, the Court found that "BCBS's medical policy is internally inconsistent, ambiguous, and most fatally, not supported by the evidence in the record," and thus remanded the class members' claims for ABA therapy for redetermination.  The Court further found that "[a]ll class members who made a claim for ABA therapy that was denied by [BCBS] on the grounds that ABA therapy is deemed experimental or investigative shall have their denials overturned ***and their claims paid, with interest***."  (Dkt. 125 (emphasis added)).  Under the facts of this case, the undersigned suggests that plaintiffs' case has relatively more merit than BCBS's, and the fifth *King* factor weighs in favor of the plaintiffs.  *See Blajei*, 2010 WL 3855239, at *8.  Therefore, based on the *King* factor analysis above, the undersigned suggests that plaintiffs are entitled to an award of attorney's fees and costs under § 1132(g)(1).

### B.    Amount of Attorney's Fees and Costs

In their motion for attorney's fees and costs, plaintiffs ask the Court to award attorney's fees in the amount of $752,234 for 2015.25 hours of work, as calculated under the "lodestar method."  (Dkt. 128).  Plaintiffs subsequently amended that request in their Joint Statement to fees in the amount of $829,651,

12

for additional work performed to date.  (Dkt. 150).  "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."  *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).  The "lodestar" method is the "proper method for determining the amount of reasonable attorney's fees."  *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citations omitted).  This approach involves two steps.  First, the court calculates the "lodestar" by multiplying "the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved."  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986).  Second, the court "may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation."  *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).

## 1.     Reasonable hourly rates

A reasonable hourly rate is generally calculated according to the "prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  Under Sixth Circuit law, "the 'prevailing market rate' is that rate which lawyers of comparable skill and experience can expect to command within the

13

venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area where he maintains his office. . . ." *Adcock-Ladd*, 227 F.3d at 350.  The Sixth Circuit has further held that "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 Fed. Appx. 615, 618 (6th Cir. 2011) (quoting *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007) (district court did not abuse its discretion by choosing billing rate that fell about halfway between the parties' requested rates)); *see also Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986) (reviewing 131 attorney fee shifting statutes, including ERISA, and noting "[t]he statutes use the words 'reasonable' fees, not 'liberal' fees.  Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.  Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.").

Prevailing attorneys must justify the reasonableness of a requested fee award.  *Blum*, 465 U.S. at 896 n.11.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are

14

in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *see also Reed*, 179 F.3d at 472 (the party requesting the fee award bears the burden to produce evidence in support of the rates claimed).

Here, the relevant community is the Eastern District of Michigan. *See Adcock-Ladd*, 227 F.3d at 350 (the "relevant community" is the legal community within the court's territorial jurisdiction). Plaintiffs submit an hourly rate of $400 to $500 for partners, $310 for associates, and $120 for legal assistants, and assert that these rates are reasonable. Plaintiffs state that the State Bar of Michigan's 2010 Billing Rate for the 95th percentile for managing partners is $500 and for associates is $310, and that the 95th percentile hourly rate for attorneys practicing Consumer Law is $515 and for attorneys practicing Insurance Law is $500. Plaintiffs also assert that the National Law Journal's 2012 Billing Survey had a median hourly rate of $501 for partners and $317 for associates, and according to the ABA Journal, the average hourly rate for partners is $661. Plaintiffs also refer to several cases within the Sixth Circuit approving hourly rates as high as $500, and attach declarations of Michigan attorneys attesting to the reasonableness of plaintiffs' hourly rates. (Dkt. 128). BCBS responds that the hourly rates submitted by plaintiffs are excessive, and that the billing surveys from the National Law Journal and the ABA should be rejected because they are based on

nationwide data and not data regarding the "relevant community."  According to

BCBS, the 95th percentile rate for an attorney of Mr. Mantese's experience (30

years) is $425/hour, and the court in *Caudill* rejected a $500 per hour billing rate

for an ERISA class action.  *See Caudill*, 2011 WL 1595044 at *12.  Further,

BCBS points out that the Mantese Firm bills its associates at an hourly rate of

$310, regardless of an associate's experience level, and plaintiffs have provided

no information on the experience of the Mantese Firm's partners (other than Mr.

Mantese) or associates who billed time on this matter.  BCBS suggests an

appropriate hourly rate for the Mantese firm partners should be no greater than

$400, and, because there is no way to verify the experience level of the associates,

the appropriate hourly rate for the associates should be no more than $203, the

average rate for associates based on the 2010 State Bar Survey.  BCBS further

asserts that Mr. Conway, a sole practitioner with 16 years experience, should be

entitled to an hourly rate of $255 to $300, based on the State Bar Survey.

First, addressing the claimed hourly rates of $500 for Mr. Mantese and

$400 for his partners, the undersigned notes that plaintiffs list the 95th percentile

rates for partners ($500-$515) and Mr. Mantese avers that "rates of $500 per hour

for senior partners to $310 for associates are fair and reasonable market rates"

"[f]or attorneys practicing in the highly specialized field of complex commercial

litigation."  (Dkt. 128-24, 128-25).  While Mr. Mantese and his partners might

16

very well be able to command rates of $400 to 500 per hour in the open market for legal services, the test for awarding fees is not primarily the worth of the attorney performing the services. *See Gonter*, 510 F.3d at 618. Rather, the standard is a rate that is sufficient to encourage competent attorneys in the relevant community to undertake the representation of similarly-situated plaintiffs. *Id.* The 75th percentile hourly rate for a Managing Partner as indicated in the State Bar Survey is $315, and $350 for equity and non-equity partners. For attorneys with between 16 and 35 years of experience, the 75th percentile rate is $300.00 per hour and the 95th percentile rate is $425 to $450 per hour. The 75th percentile hourly rate for attorneys practicing Consumer Law is $350, and for attorneys practicing Insurance Law is $300. Considering all of these factors the undersigned concludes that $425.00 per hour is a reasonable attorney fee for the hours submitted by Mr. Mantese and that $350.00 per hour is a reasonable attorney fee for the hours submitted by Mr. Mantese's partners.

Second, addressing Mr. Conway's claimed hourly rate of $400, the undersigned notes that Mr. Conway is a sole practitioner. The 75th percentile hourly rate for sole practitioners is $250 and the 95th percentile hourly rate is $350 in the State Survey. For attorneys with 16 to 25 years in practice, the 75th percentile hourly rate is $300 and the 95th percentile hourly rate is $450. Considering all of these factors, the undersigned concludes that $350.00 per hour

is a reasonable hourly rate for the hours submitted by Mr. Conway.

Finally, as for the associates at the Mantese Firm, plaintiffs assert that all associates, regardless of experience level, are entitled to an hourly rate of $310, which represents the 95th percentile hourly rate for associates in the State Bar Survey.  The undersigned notes that plaintiffs have not submitted any information on the experience level of those associates who worked on the case, including the years in practice for any of those associates, even though BCBS raised the absence of such information in its response to plaintiffs' motion for attorney's fees.[2]  It is plaintiffs' burden, as the moving party, to establish a basis for their fees and the reasonableness of their claimed hourly rates.  *See Blum*, 465 U.S. at 596 n.11; *see also Reed*, 179 F.3d at 472 ("The party seeking attorneys fees bears the burden of documenting his entitlement to the award.").  BCBS asserts that the Court should reduce all associate time to a rate of no more than $203 per hour, the average rate for associates based on the 2010 State Bar Survey.  The undersigned notes that the 75th percentile hourly rate for associates in the State Bar Survey is $228.  Considering all of these factors, the undersigned suggests that $250.00 per hour is

---

[2] Following the hearing on this matter, plaintiffs filed a motion to file a supplemental brief and exhibit in support of their motion for attorney's fees and costs, in part seeking to provide the "credentials" of the associates who billed time to the case.  (Dkt. 154).  On November 6, 2013, the undersigned denied plaintiffs' motion, explaining that the issues addressed in the motion were raised in BCBS's response brief in opposition to plaintiffs' motion for attorney's fees and costs and that plaintiffs therefore had an opportunity to address those issues in their reply brief, but did not do so.  (Dkt. 158).

a reasonable hourly rate for the hours submitted by the Mantese Firm associates.

BCBS does not object to any of the hourly rates submitted by the paralegals who represented plaintiffs in this matter and those rates are therefore deemed reasonable.

### 2.     Number of hours billed

Plaintiffs originally claimed to have spent a total of 1,975.25 hours prosecuting this action and sought an additional 40 hours to account for future attorney time necessary to complete work on the fee issue, for a total fee request of $752,234 for 2015.25 hours.  (Dkt. 128).  However, as of the filing of their Joint Statement, plaintiffs claimed to have expended an additional 228.25 hours, increasing their attorney's fees claim to $829,651, with $77,417 in fees incurred since filing the original motion.  (Dkt. 150).  BCBS argues that plaintiffs' billing records are defective for a number of reasons.[3]  Specifically, BCBS argues that: (1) the records contain frequent instances of block billing; (2) the descriptions in the records are vague and provide insufficient detail to establish that the work was reasonably necessary to the litigation (i.e., telephone calls, emails, "meeting with

---

[3]BCBS stated in its response brief that plaintiffs failed to produce any billing records from the Mantese Firm after September 15, 2011, and argued the Court therefore should not allow recovery for any fees attributable to work performed by the Mantese Firm after that date. (Dkt. 130).  However, plaintiffs subsequently submitted a corrected exhibit to their motion for attorney's fees and costs containing Mantese Firm billing entries through May 1, 2013, asserting that the document originally filed mistakenly did not contain all pages of that document.  (Dkt. 131, 131-1).  The undersigned finds therefore that plaintiffs' original error has been corrected.

GM," "consult with GM"); (3) the Mantese firm bills in quarter-hour increments instead of tenths of an hour, and Conway did not bill less than 0.3 for any task allegedly performed; (4) the records contain attorney billing for administrative, clerical or other non-compensable tasks (including press releases), including time as far back as September 18, 2009, over a year before the complaint was filed; and (5) plaintiffs' counsel has grossly overstaffed and overbilled this case. BCBS argues that the fees should be further reduced based on the insignificant results achieved (the class certified was smaller than the original class sought). BCBS asserts that $113,802.50 of the Mantese Firm attorney's fees (through September 2011) and $187,994.00 of the Conway firm attorney's fees, or a total of $301,796.50, should not be allowed for the reasons stated in their response. (Dkt. 130-2).

As the Sixth Circuit explained:

> The key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation. However, entries may be sufficient even if the description for each entry is not explicitly detailed.

*United States ex rel. Lefan v. Gen. Elec. Co.*, 397 Fed. Appx. 144, 148-49 (6th Cir. 2010). It is plaintiffs' burden to document "the appropriate hours expended and

hourly rates." *Hensley*, 461 U.S. at 437. "Where documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. And, where the application for fees is voluminous, the court may order an across-the-board reduction in compensable hours. *See Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 2008 WL 906031, at *4 (W.D. Mich. Mar. 31, 2008) (citation omitted). While "counsel need not 'record in great detail' each minute he or she spent on an item . . . 'the general subject matter should be identified' [and the billing entries have to be] read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 553-54 (6th Cir. 2008).

### a.   Block billing and vague entries

BCBS argues that both the Mantese and Conway Firms' records contain frequent instances of block billing, and that "[i]n the Sixth Circuit, the law is clear that significant reductions in time are appropriate where block billing is used." *Bell v. Prefix, Inc.*, 784 F. Supp.2d 778, 787 (E.D. Mich. 2011). BCBS also complains that the descriptions in plaintiffs' billing records are impermissibly vague. Plaintiffs concede to some block billing and "occasional generally phrased entries," but argue "[b]lock billing is not impermissible," citing *Renneker v. Comm'r of Soc. Sec.*, 2011 WL 6950510, at *8 (S.D. Ohio Dec. 8, 2011), *adopted as modified by* 2012 WL 12696 (S.D. Ohio Jan. 4, 2012), and that no reduction in

fees is warranted.  Plaintiffs further assert that they maintained sufficiently detailed records to discern that the time was reasonably expended on this litigation, and that their counsel "is not required to record in great detail how each minute of his time was expended," but rather "should identify the general subject matter of his time expenditures."  *Hensley*, 461 U.S. at 437 n.12.

"[B]lock billing refers to the 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  *Renneker*, 2011 WL 6950510, at *8 (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 n.9 (10th Cir. 1998)).  It is well-settled that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).  "Attorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case."  *Imwalle*, 515 F.3d at 552.

As far as the undersigned is aware, while the practice of block billing is generally discouraged, the Sixth Circuit has never explicitly rejected that practice.

22

However, courts in this district have addressed block billing and have reduced fees because of a parties' use of vague block billing. *See, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. Kelsey-Hayes Co.*, 2013 WL 2634815, at *4 (E.D. Mich. June 12, 2013) (reducing class counsel's requested fees, in part, "because of their use of vague block billing entries such as "review documents," "research legal issues," and "plan strategy"); *Gratz v. Bollinger*, 353 F. Supp.2d 929, 939 (E.D. Mich. 2005) (reducing the requested fees by ten percent due block billing and vague entries because block billing frustrates the Court's ability to determine whether a reasonable number of hours were expended on each tack).  Other courts in the Sixth Circuit similarly recognize that "[c]ourts unquestionably have authority to downwardly adjust the fee claims because of block billing and vague entries." *Swapalease, Inc. v. Sublease Exchange.com, Inc.*, 2009 WL 1119591, at *2 (S.D. Ohio Apr. 27, 2009); *see also Heath v. Metro. Life Ins. Co.*, 2011 WL 4005409, at *10-11 (M.D. Tenn. Sept. 8, 2011) (reducing fees by 20% because counsel's block billing made it impossible to "ensure with a high degree of certainty that the hours allegedly expended were in fact expended in a reasonable, non-duplicative fashion").

Recognizing that the Court does have discretion in this area, the undersigned concludes that the billing entries submitted by plaintiffs contain

23

numerous instances of block billing in which all work by a time keeper performed

on a particular date is included, without specifying how much time was allotted to

each individual task, such as:

- 10/5/11 – WIP – 6.75 hours – Research regarding administrative record; emails.

- 11/17/11 – WIP – 11.50 hours – Work on answer in opposition to petition for appeal; correspondence with GM regarding same; further work on answer in opposition.

- 5/4/12 – JJC – 8.0 hours – Prepare outline and draft Motion for Judgment on the Administrative Record; Review Blue Cross Administrative Record. Correspondence with co-counsel

- 6/12/12 – WIP – 4.0 hours – Research; meeting with BS.

- 7/10/12 – BMS – 12.50 hours – Work on reply brief in support of motion for judgment; research issues regarding same; email with GM and JJ regarding same; meeting with GM

(Dkt. 128-4; Dkt. 131-1).  In addition, the billing records contain numerous vague

time entries throughout, generally referring to tasks, meetings or communications,

such as "Meeting with GM," "emails," "Conference with Co-Counsel," "Consult

with DH," "reviewed correspondence," "research," and "telephone call with JC,"

without any indication of the general subject matter of such communications or

tasks, the number of communications or tasks, or any explanation to justify the

time devoted to those tasks and communications.  (Dkt. 128-4; Dkt. 131-1).  The

undersigned suggests that such time entries do not provide sufficient detail as to

the tasks performed by plaintiffs' attorneys. *See, e.g., Kinder v. Northwestern Bank*, 2012 WL 2886688, at *5 (W.D. Mich. June 5, 2012) ("[V]ague time entries such as "telecon local counsel," "emails with defense counsel," and "emails re settlement" are plainly insufficient.") (citing *Gratz*, 353 F. Supp.2d at 939 (entries such as "office conference," "research," and "review article" deemed inadequate)), *adopted by* 2012 WL 2886701 (W.D. Mich. Jul. 13, 2013). The common practice in this circuit, and in others, when the court is confronted with a request for the award of attorney's fees in the face of inadequate billing records, is "across-the-board fee reductions." *See Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 n.5 (N.D. Ohio 1997) (collecting cases); *Gratz*, 353 F. Supp.2d at 938 (opting to reduce the hours expended by a percentage amount); *In re Pierce*, 190 F.3d 586, 593-94 (D.C. Cir. 1999) (imposing a ten percent fee reduction for insufficient billing entries, making it impossible for the court to determine the reasonableness of the billings in terms of necessity and amount of time expended). The undersigned concludes that the total fee request should be reduced by five percent (5%). This is appropriate in light of plaintiffs' burden of production and in light of the "block billing" and vague entries included in the billing records and the otherwise insufficient documentation.

### b.    Billing in large time increments

BCBS contends the Mantese Firm bills in quarter-hour increments, and that

while the Conway Firm bills in tenths of an hour increments, Mr. Conway did not bill less than .3 hours for any tasks performed.  BCBS asserts that plaintiffs' attorney's fees should be reduced because the larger billing increments likely led to overbilling in many instances.  Plaintiffs respond that BCBS's argument is baseless and "[a]s long as the total number of billable hours is reasonable in relation to the work performed, the award should be affirmed," quoting *B&G Mining, Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008).[4]

The Sixth Circuit recently stated that "[w]hether quarter-hour billing is reasonable is a matter within the discretion of the district court."  *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013) (citing *Bench Billboard Co. v. City of Toledo*, 499 Fed. Appx. 538, 549 (6th Cir. 2012) (upholding 7.5% reduction for unreasonableness), *cert. denied*, 133 S. Ct. 1252 (2013)).  As the district court noted on remand, "[a]s one district court has observed, 'very few telephone calls last more than one-tenth of an hour and . . . it rarely takes more than one-tenth of an hour to read an incoming letter or write a short outgoing letter.'"  *Yellow Book USA, Inc. v. Brandeberry*, 2013 WL 2319142, at *8 (S.D. Ohio May 28, 2013) (quoting *In re Tom Carter Enters., Inc.*, 55 B.R. 548, 549

---

[4] The undersigned notes that in *B& G Min.*, the applicable regulations in that case *required* that the fees be submitted in quarter-hour increments.  *B & G Mining*, 522 F.3d at 666 (citing 20 C.F.R. § 802.203(d)(3)).

(Bankr. C.D. Cal. 1985)).  The Sixth Circuit explained, however, that because the concern with quarter-hour increments is over-billing, only fee reductions, not fee denials, are a proper exercise of the court's discretion.  *Yellowbook*, 708 F.3d at 849 (explaining that the purpose of reductions is to counter over-billing, not punish the failure to use tenth-of-an-hour billing); *see also Yellow Book USA*, 2013 WL 2319142, at *8 (on remand, reducing Yellowbook's fee award by 5% "due to billing in quarter-hour increments, a fee-enhancing mechanism, and because Yellowbook's attorney charged a regular hourly rate for travel").  Based on a review of plaintiffs' fee submission, the undersigned concludes that the billing increments used in this matter are not unreasonable and accordingly no reduction in fees is necessary for this reason.

> **c.   Billing for administrative/non-compensable tasks and excessive and duplicative billing**

BCBS alleges that plaintiffs have improperly billed time for administrative and other non-compensable tasks and that plaintiffs have grossly overstaffed and overbilled this case from the start, noting that eight of the nine attorneys at the Mantese Firm have billed time on this matter, in addition to Mr. Conway and paralegal time from both firms.  BCBS asserts, as an example, that six attorneys allegedly worked on plaintiffs' July 2011 summary judgment motion and billed in excess of 35 hours on this motion, which was subsequently denied because it was

not based on the administrative record.  (Dkt. 63).  BCBS further contends that plaintiffs' counsel spent over 53 hours preparing for and arguing two motions in one hearing–plaintiffs' motion for class certification and BCBS's motion for summary judgment–which time did not include the time the firms spent drafting the underlying briefs on the two motions.  BCBS asserts that this is a gross duplication of effort and an unreasonable amount of time to bill for these two discrete tasks.  And, BCBS argues, plaintiffs' counsel billed for discovery even after the Court ordered, on December 16, 2011, that the case was to be decided on the administrative record alone.  BCBS states that this court has held "[w]hile a party is certainly entitled to having two attorneys represent him, the Court finds that it is not reasonable to consistently bill a party for two attorneys to do the same work/review each other's work."  *Bell*, 784 F. Supp.2d at 787.

Plaintiffs argue in response that they did not overstaff or overbill this case, but that the time billed was necessary because of the significant complexity of both the scientific and legal issues in this case and the difficulty of opposing a well-funded opponent.  Plaintiffs also assert that time spent on discovery is compensable and reasonable, given that the scheduling order provided for discovery to be completed by November 30, 2011, and BCBS itself served the first discovery in this case on June 15, 2011, and that plaintiffs had reason to seek discovery here, given BCBS's dual role as payor and administrator, citing *Moss v.*

*Unum Life Ins. Co.*, 495 Fed. Appx. 583, 596-97 (6th Cir. 2012) ("[D]iscovery is limited in cases arising under ERISA" but is allowed in order to allege "bias" on the part of the administrator).

BCBS also argues that the Court should disallow fees expended on publicity and clerical and administrative tasks (such as "file organization," "work on press release," "numerous calls and emails from media," and "proofread correspondence and filing"), as well as for time spent before plaintiffs' engagement of the Mantese Firm.  Plaintiffs respond that they did not include any "non-legal" tasks in their billing entries, and that the alleged non-legal tasks BCBS raises were inextricably intertwined with purely legal tasks performed by attorneys.  Plaintiffs also contend that the "media" or "public relations" time entries for press releases were part of plaintiffs' ongoing and important obligations to initiate and maintain communication with as many class members as possible regarding this case. Regarding the pre-litigation billing entries, plaintiffs assert that Potter signed the engagement letter on September 27, 2009, and that the only time entry prior to that date was for 0.25 hour for a telephone call with Potter, and that plaintiffs are entitled to time for investigating and researching possible litigation before filing the complaint.

Statutes conferring attorney's fees on prevailing parties are "not designed as a form of economic relief to improve the financial lot of attorneys, nor were they

intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Coulter*, 805 F.2d at 149 n.4 (citation omitted); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do [courts] approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."). When determining whether hours claimed by a party were reasonably expended, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). And, "[w]hile there is nothing inherently unreasonable about making an award for time spent by two or more lawyers engaged in the same representation, counsel bears the burden of showing his or her specific contribution." *Gratz*, 353 F. Supp.2d at 942 (citation omitted). "[I]f the same task is performed by more than one lawyer, multiple compensation should be denied. The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983),

*overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987). "Decisions concerning which tasks an attorney performs and involving the allocation of personnel . . . will be left to the discretion of the professional unless the allocation is egregious [because] . . . [c]ompetent counsel are in the best position to determine how their time and the time of their associates can best be allocated." *Communities for Equity*, 2008 WL 906031 (citations omitted). However, courts have not allowed attorney's fees for administrative tasks such as "organized file," "sorting questionnaires" "filing" and "organize meeting." *See, e.g., Caudill*, 2011 WL 1595044, at *14-15; *Gratz*, 353 F. Supp2d at 941 ("Plaintiffs should not be compensated for the hours their attorneys expended on media and public relations efforts").

BCBS has presented two instances where plaintiffs' billing records show multiple attorneys engaged in the same tasks, with no indication of the specific contribution the various lawyers made with respect to that task beyond simply reviewing another attorney's work. For example, BCBS points out that six plaintiffs' attorneys billed over 35 hours over three days for work reviewing and revising plaintiffs' motion for summary judgment, and billed over 53 hours for preparation for a hearing on two other motions, not counting the time billed briefing the two underlying motions. Further, the undersigned notes, based on its review of BCBS's spreadsheet of objections to plaintiffs' billing records, that five

attorneys billed approximately 27 hours working on plaintiffs' response to BCBS's motion for reconsideration in August 2011.  As the court noted in *Gratz*, "a reduction of the [plaintiffs'] attorneys' hours only is appropriate where there is no indication of the specific contribution the various lawyers made with respect to that task beyond simply reviewing another attorney's work."  *Gratz*, 353 F. Supp.2d at 942.  "Thus, courts have reduced fee awards where the requested fee reflected duplication of services, excessive time for simple or routine tasks, the use of too many attorneys, excessive conferencing, unnecessary consultant work, or the performance of clerical tasks by legal professional."  *Fharmacy Records v. Nassar*, 729 F. Supp.2d 865, 884-85 (E.D. Mich. 2010) (citations omitted), *aff'd*, 465 Fed. Appx. 448 (6th Cir.), *cert. denied*, 133 S. Ct. 545 (2012); *see also Hensley*, 461 U.S. at 433 ("The district court . . . should exclude . . . hours that were not 'reasonably expended.'  Cases may be overstaffed, and the skill and expertise of lawyers vary widely."); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) ("[O]verstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees."); *Hudson v. Pittsylvania Cnty., Va.*, 2013 WL 4520023, at *7 (W.D. Va. Aug. 26, 2013) ("Although it is not *per se* unreasonable for a client to be represented by multiple attorneys in court proceedings, when approving fees for those attorneys, courts

require a 'distinct contribution by their presence or participation.'").
"Nonetheless, 'courts have held that it is improper to engage in an "ex post facto
determination of whether attorney hours were necessary to the relief obtain."  The
issue "is not whether at the time the work was performed, a reasonable attorney
would have engaged in similar time expenditures."'" *Fharmacy Records*, 729 F.
Supp.2d at 885 (citations omitted).

Based on the above, the undersigned concludes that attorney time billed for
"telephone call with client" is compensable, as is attorney travel time.  *See
Caudill*, 2011 WL 1595044, at *15 (travel time is ordinarily billable and therefore
appropriately included in an award of attorney's fees).  However, attorney time for
clerical tasks such as "file organization" and "proofread correspondence and
filing" is not compensable and fees for such time should be excluded.  *See id*. at
*14-15; *Allison v. City of Lansing*, 2007 WL 2114726, at *1 (W.D. Mich. July 19,
2007) ("It is not appropriate to award attorney fees for strictly clerical tasks.")
(collecting cases).  Thus, the following time entries should be excluded:

- 7/18/11 – SRP – 0.75 hours – Retrieved documents from Wayne
  Library

- 1/12/11 – ZMK – 1.0 hours – File organization for case

- 2/8/11 – ZMK – 2.0 hours – File organization for case

- 2/16/11 – ZMK – 2.0 hours – Continue and complete file
  organization.

33

- 8/13/12 – TMD – 1.0 hours – Proofread correspondence and filing

Plaintiffs assert that the time spent on press releases was part of their ongoing obligation to initiate and maintain communications with as many class members as possible.  The undersigned notes that this time is minimal and will not be excluded.  Finally, as to BCBS's allegations of overstaffing and excessive billing, while the undersigned generally allows a fair amount of deference to the attorneys as to whether such time was reasonably necessary, the undersigned concludes that the specific time entries identified above–(1) six attorneys billing over 35 hours for plaintiffs' motion for summary judgment on July 18, 2011 through July 21, 2011, (2) five attorneys billing over 27 hours for plaintiffs' response to BCBS's motion for reconsideration July 30, 2011 through August 2, 2011, and (3) billing over 53 hours for preparation for a hearing from June 8, 2011 through June 23, 2011–as identified in BCBS's spreadsheet of objections to plaintiffs' billing records, are excessive and unreasonable.  Accordingly, these amounts should be reduced by 25%.  However, the undersigned declines to reduce plaintiffs' fee request for BCBS's remaining objections.

### d.  Insignificant results

BCBS argues that plaintiffs' fee award should be reduced because it contends that plaintiffs achieved only "insignificant results."  BCBS asserts that

plaintiffs sought certification of a class of claimants going back to 2004, but the final class consisted only of those individuals whose claims were denied based on the 2010 Statement, which consists of, at the very most, 119 persons. BCBS argues that any fee award should be reduced because the Court decertified the majority of plaintiffs' class, citing *Gradisher v. Check Enforcement Unit, Inc.*, 2003 WL 187416 (W.D. Mich. Jan. 23, 2003) (downward adjustment warranted where "[e]ven though a class was certified, no recovery was made on behalf of the class because the Court ultimately decertified the class"). BCBS further argues that Mr. Conway spent at least 12.6 hours compiling and defending plaintiffs' version of the administrative record, which was ultimately struck by the Court. Plaintiffs respond that the time they spent on tasks that were not ultimately successful is still reasonable and compensable, citing *Wooldridge v. Marlene Industries Corporation*, 898 F.2d 1169, 1177 (6th Cir. 1990) ("[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.").

The undersigned notes that this case is not like *Grandisher*, cited by BCBS, because unlike the plaintiff in *Grandisher*, plaintiffs here have achieved a recovery for the class. A plaintiff prevails "when the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying

the defendant's behavior in a way that directly benefits the plaintiff." *See Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  Here, the Court declared BCBS's policy arbitrary and capricious and ordered plaintiffs' claims remanded for redetermination, and thus plaintiffs achieved "actual relief on the merits."  This is simply not an "insignificant result." *See Cockrell v. Hartford Life & Accident Ins. Co.*, 2013 WL 2147454, at *6-7 (W.D. Tenn. May 15, 2013) (refusing to classify plaintiff's obtaining of a remand as a "partial success" when it was defendant's failure to consider and adequately analyze plaintiff's claim that made judgment in plaintiff's favor possible).  Moreover, the undersigned also recognizes that in some cases, such as here, plaintiffs' "claims for relief will involve a common core of facts or will be based on related legal theories." *Hensley*, 461 U.S. at 435. When this occurs, counsel's time is devoted more generally to the litigation as a whole, "making it difficult to divide the hours expended on a claim-by-claim basis." *Id.*  "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* ("Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee.").  The undersigned therefore declines to reduce plaintiffs' fee award for these reasons. *See Caudill*, 2011 WL 1595044, at *16 (declining to reduce plaintiffs' attorney's fees based on the fact the class certified is smaller than the class size plaintiffs originally sought because plaintiffs were very

36

successful in this lawsuit).

### 3.     Fee Enhancement

Plaintiffs seek a fee enhancement "sufficient to compensate for any amount by which the lodestar is less than" the amount stated in the motion.  BCBS objects to the request for an enhancement, contending that enhancements should be rarely given and that plaintiffs have not justified an enhancement in these circumstances.

The United States Supreme Court has held that fee enhancements may be awarded in "rare" and "exceptional" circumstances where the lodestar fee would not have been "adequate to attract competent counsel."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) (attorney seeking a fee enhancement must provide "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel[.]'").  An enhancement may be appropriate when: (1) the hourly rate does not adequately measure the attorney's true market value; (2) the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted; or (3) an attorney's performance involves an exceptional delay in the payment of fees.  *Id.*  The undersigned concludes that it is not necessary to enhance the fee award in this case because the lodestar calculated above adequately compensates plaintiffs for the risks inherent in this type of litigation and plaintiff has failed to establish that this is the "rare" or "exceptional" case requiring enhancement of fees.  Accordingly, plaintiffs' request for an

enhancement is denied.

### 4.   Costs

Plaintiffs originally sought $9,464.52 in costs pursuant to Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920 and 29 U.S.C. § 1132(g) (Dkt. 128), and amended that amount to $10,049.12 in their Joint Statement.  (Dkt. 150).  Plaintiffs assert that a court may grant an award of expenses that includes expenses not enumerated in 28 U.S.C. § 1920 provided they are the type of expenses that an attorney would normally pass along and bill separately to a client.  *See Gradisher*, 2003 WL 187416; *Vick v. Metro. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 41708, at *18-20 (E.D. Mich. June 22, 2006).  BCBS responds that plaintiffs are not entitled to recover costs that are not listed in 28 U.S.C. § 1920, citing *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 (1991) ("We are aware of no authority to support the counter-intuitive assertion that the term 'costs' has a different and broader meaning in fee-shifting statutes than it has in the cost statutes that apply to ordinary litigation.").  BCBS thus argues that telephone and postage costs are not taxable under 28 U.S.C. § 1920, and neither are facsimile costs, travel expenses, a luncheon between plaintiffs' attorneys, or the costs of news releases, and thus a total of $2,082.07 should be deducted from plaintiffs' claimed costs.  *See King v. Gowdy*, 268 Fed. Appx. 389, 391 (6th Cir. 2008) (holding "[d]istrict courts may not award costs not authorized by the statute [i.e., 28 USC 1920]").

Like attorney's fees, the Court has broad discretion to award costs to parties in ERISA actions who have shown some degree of success on the merits. *See* 29 U.S.C. § 1132(g)(1) (providing that the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."); *Hardt*, 560 U.S. at 254. Rule 54(d)(1) provides that "unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Further, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" upon motion under Rule 54(d)(2), subject to Rule 23(h) procedures. Fed. R. Civ. P. 23(h). ERISA is silent on those costs other than attorney fees that the Court may tax under the authority of Rule 54(d). Regarding the scope of costs allowed in an ERISA action, the courts in the Sixth Circuit are not consistent as to whether "costs" include nontaxable costs. *Compare, e.g. Thies*, 839 F. Supp.2d at 896 (ERISA's attorney fee provision, which allows the recovery of costs in the Court's discretion, is not limited by statute limiting taxation of certain costs), *and Moore v. Menasha Corp.*, 2013 WL 308960, at *5-6 (W.D. Mich. Jan. 25, 2013) (ERISA action awarding, without explanation of costs allowed under § 1920, costs for computerized research, telephone and other expenses not allowed under § 1920), *with Electric Energy, Inc. v. Lambert*, 2011 WL 1883986, at *6 (W.D. Tenn. May 17, 2011)

("28 U.S.C. § 1920 generally governs awards of costs under federal law, including ERISA actions, and provide for only specific kinds of costs.") *and Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1145 (S.D. Ohio 1997) ("29 U.S.C. § 1332(g)(1) allows the court to award those costs of action usually allowed under 28 U.S.C. § 1920."). However, a review of decisions from other jurisdiction supports the view that costs under ERISA include nontaxable costs as a part of a reasonable attorney's fee, as long as those costs are reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services. *See, e.g., DeBartolo v. Health & Welfare Dept. of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, 2011 WL 1131110, at *10 (N.D. Ill. Mar. 28, 2011) (collecting cases awarding nontaxable costs for computerized research, postage and copying as part of a reasonable attorney's fee in ERISA petition); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 2008 WL 2600364, at *14 (E.D. Pa. June 26, 2008), *aff'd*, 579 F.3d 220 (3d Cir. 2009), *cert. denied*, 559 U.S. 940 (2010) (awarding taxable and nontaxable costs in an ERISA action and citing, in part, *Algie v. RCA Global Commc'n, Inc.*, 891 F. Supp. 875, 898 & n.13 (S.D.N.Y. 1994) (awarding "reasonable out-of-pocket expenses associated with this lawsuit" and noting that "Section 502(g)(1) of ERISA refers to an award of 'costs,' but that term apparently covers not only taxable costs under 28 U.S.C. § 1920, but also other disbursements that are

40

customarily charged to the client" (listing cases)), *aff'd*, 60 F.3d 956 (2d Cir. 1995)).  Further, the Sixth Circuit has allowed reasonable non-taxable costs as a part of the prevailing party's "reasonable attorney's fee" under other fee-shifting statutes.  *See*, *e.g.*, *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979) (overruled on other grounds).[5]  Under such circumstances, the court has the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services, such as reasonable photocopying, paralegal expenses, and travel and telephone costs.  *Id.* ("The authority granted in section 1988 to award a reasonable attorney's fee include[s] the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.").  The undersigned therefore is more persuaded by those courts allowing the recovery of costs in addition to those taxable under § 1920.  *See Thies*, 839 F. Supp.2d at 886 (noting no "authority that would lead the court to find that the express language of 29 U.S.C. § 1132(g)(1), which allows the recovery of costs in the Court's discretion, is limited by 28 U.S.C. § 1920."); *Hargrove v. Eaglepicher*

---

[5] Although *Northcross* involves § 1988, not ERISA, "[t]he language of [42 U.S.C. § 1988(b) and 18 U.S.C. § 1964(c)] . . . is similar to the ERISA provision at issue here[.]"  *United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 293 (3d Cir. 2007); *Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2 (1989) (emphasizing that "fee-shifting statutes' similar language is a strong indication that they are to be interpreted alike") (quotation marks omitted).

*Corp.*, 2012 WL 1668152, at *2 (E.D. Mich. May 10, 2012) (approving award of costs, including non-taxable costs, in an ERISA class action); *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Ford Motor Co.*, 2007 WL 4571648, at *1 (E.D. Mich. Dec. 27, 2007) ("Class counsel are entitled to fees and nontaxable costs pursuant to ERISA for their work since July 31, 2006."); *see also Yip v. Little*, 519 Fed. Appx. 974, 977 (9th Cir. 2013) ("Costs are a category of expenses distinct from attorney's fees under 29 U.S.C. § 1132(g)(1). However, if it is 'the prevailing practice in the local [legal] community' to separately bill reasonable litigation expenses to the client, lawyers may recover those expenses as 'attorneys fees.'" (internal citation omitted)).  Therefore, the undersigned concludes that plaintiffs' claimed telephone, postage, facsimile and travel costs should be allowed, but that plaintiffs' claimed costs for meals and press releases should not be allowed, as plaintiffs have not established that these fees would normally be charged to the fee-paying client.

BCBS also argues that plaintiffs' costs should be reduced because their expense records are insufficiently detailed.  Specifically, as to copying charges, BCBS contends that the Conway Firms records simply state "Copies, Prints, and/or Scans," and the Mantese Firm records simply refer to "copying charges" per month, but that plaintiffs fail to describe the necessity of obtaining such copies.  BCBS further argues that $0.25/copy (as charged by the Mantese Firm) is

too high, and that $0.10 is reasonable. *See Bell*, 784 F. Supp.2d at 792 (holding

$.10 per copy is a reasonable rate for reimbursement) (citations omitted).  Thus,

BCBS argues that a total of $3,013.45 should be subtracted from plaintiffs'

claimed costs.  The undersigned notes that copying costs are taxable under

1920(4), provided that "the copies are necessarily obtained for use in the case."

With regard to photocopying charges, copying costs are generally limited to "those

costs incurred for copies of documents prepared for the court's consideration or

for the opposing party."  *Moore*, 2013 WL 308960, at *5 (quoting *Pion v. Liberty

Dairy Co.*, 922 F. Supp. 48, 53 (W.D. Mich. 1996)).  Likewise, "[c]opies obtained

only for the convenience of counsel, including extra copies of filed papers and

correspondence, are ordinarily not recoverable."  *Id.* (quoting *Charboneau v.

Severn Trent Labs.*, 2006 WL 897131, at *1 (W.D. Mich. Apr. 6, 2006)).  "The

burden is on the party seeking reimbursement for photocopying costs to show that

the copies were necessary for use in the case."  *Id.*  However, the undersigned

notes that, as a practical matter, it would be difficult to document what every

photocopy made in the course of pursuing a lawsuit of this nature was used for.

That is not to say it would be impossible to do that when a large number of copies

are made for a relatively discrete purpose.  For example, plaintiffs identified over

2500 copies made for the month of July 2011 and over 1300 copies made for the

month of August 2012.  It is reasonable to assume that in those time periods some

specific purpose for making a significant number of copies could have been documented.  Recognizing that documentation was lacking to some degree in this case as to the purpose for the copies, a ten percent (10%) reduction in the amount requested for copies will be made.  Further, this court has held that $.10 per copy is a reasonable rate for reimbursement, and the undersigned concludes that $.10 per copy would be a reasonable rate in this case.  *See Bell*, 784 F. Supp.2d 778, 792 (E.D. Mich. 2011).  Therefore, plaintiffs' copying costs should be reduced by these amounts.

BCBS further argues that plaintiffs cannot recover for costs of computer legal research because plaintiffs are already seeking attorney time spent researching, and to allow costs for research expenses would produce a windfall, and that $3,524.01 should be subtracted.  As explained above, costs and expenses that an attorney generally charges to a client are recoverable in an ERISA action. While the Sixth Circuit has not specifically addressed the issue of whether computer legal research, such as WESTLAW or LEXIS, is recoverable, a number of other courts have done so.  *See, e.g., Gratz, supra*, at 945 (computerized research costs awarded but reduction made based on costs being "exhorbitant"); *Ousley v. General Motors Ret. Program for Salaried Emps.*, 496 F. Supp.2d 845, 852 (S.D. Ohio 2006) (awarding nontaxable costs under § 1132(g)(1) for computerized legal research, process server, and Federal Express expenses).  The

44

undersigned believes those judges who have awarded the costs of computerized research are in the majority and the reasons for doing so are well founded. Plaintiff is awarded their costs for computerized research, which the undersigned finds are reasonable given the length and complexity of the litigation.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiffs' motion for attorney's fees and costs be **GRANTED in part**, as specified in this Report and Recommendation.  The attorneys' hourly rates shall be adjusted as follows:

| | |
|---|---|
| Gerald Mantese | $425.00 |
| Mantese Firm Partners | $350.00 |
| Mantese Firm Associates | $250.00 |
| John Conway | $350.00 |

Further, the time entries for clerical tasks identified herein, totaling 6.75 hours, shall be excluded, and the hours identified in this report as excessive and overstaffed shall be reduced by 25%.  Finally, the total number of hours shall be reduced by 5% to account for vague and block billing entries included in the billing records.  As for costs, plaintiffs' claimed costs for meals and press releases are not allowed, and costs for copies shall be reduced to $.10 per copy and the total costs for copies shall be reduced by 10%. Plaintiffs must recalculate the amount of attorney's fees and costs sought in accordance with this Report and

Recommendation and resubmit their adjusted final request to the Court by **February 20, 2014**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

46

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 30, 2014                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on January 30, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Brian M. Saxe, David F. Hansma, John J. Conway, III, Gerald V. Mantese, Dennis J. Levasseur, G. Christopher Bernard, James J. Walsh,  Jason R. Gourley, and Nathan D. Dupes.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov

47