UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL POTTER and BRETT BOYER,
on behalf of themselves and all others
similarly situated,

        Case No. 10-cv-14981

       Plaintiffs,

        HONORABLE STEPHEN J. MURPHY, III

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Defendant.

_____/

**ORDER OVERRULING OBJECTIONS, ADOPTING REPORT
AND RECOMMENDATION** (document no. 167), **AND GRANTING IN PART
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** (document no. 128)

This is an ERISA denial-of-benefits class action, filed by named plaintiffs Michael

Potter and Brett Boyer against Defendant Blue Cross Blue Shield of Michigan ("BCBS").

Plaintiffs sought benefits they were allegedly denied for Applied Behavior Analysis ("ABA")

therapy for autism as well as declaratory and injunctive relief. The Court subsequently

certified a class of individuals enrolled in or covered by a plan offered or administered by

BCBS and governed by ERISA who were denied a claim for ABA therapy on the grounds

that, pursuant to BCBS' 2010 Medical Policy, BCBS deemed the treatment to be

"experimental." On March 30, 2013, the Court entered judgment against BCBS and in favor

of Plaintiffs, declared that BCBS' characterization of ABA therapy as "experimental or

investigative" as applied to the claims of the class members, was and is arbitrary and

capricious, overturned all denials of benefits on that basis, ordered the class members'

claims for coverage of ABA therapy to be remanded to BCBS for readministration, and

ordered BCBS to provide notice to the class at BCBS' sole expense.

On May 1, 2012, Plaintiffs filed the instant motion for attorney's fees and costs pursuant to § 502(g) of ERISA, Fed. R. Civ. P. 23(h) and 54(d)(2), L.R. 54.1 and 54.1.2, and 28 U.S.C. § 1920. The Court referred the motion to a United States Magistrate Judge. The magistrate judge conducted a hearing on October 23, 2013, and, in addition, to the original motion, response, and reply briefs, considered several subsequently filed "notices" of supplemental authority as well as response and reply briefs regarding those notices. On January 30, 2014, the magistrate judge issued a Report and Recommendation ("Report"), recommending that the motion be granted in part and reducing the amount of attorney's fees and costs requested by Plaintiffs.

BCBS has filed 11 timely objections challenging various aspects of the Report. Civil Rule 72 does not require the Court to hold a hearing when reviewing a magistrate judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, No. 09-14919, 2012 WL 1622897 (E.D. Mich. May 9, 2012). After examining the record and considering BCBS' objections de novo, the Court concludes that its objections do not have merit. Accordingly, the Court will adopt the Report, and grant the motion for attorney's fees and costs to the extent recommended by the Report.

## STANDARD OF REVIEW

Civil Rule 72 provides that a party's specific written objections to a magistrate judge's Report filed within fourteen days of service are entitled to de novo review. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

Section 502(g)(1) of ERISA provides, "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Civil Rule 23(h) provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law" upon plaintiffs' motion under Civil Rule 54(d)(2). 28 U.S.C. § 1920 provides that the Court may tax as costs various expenses.

The Supreme Court has held that a claimant need not be a "prevailing party" to be eligible for attorney's fee under ERISA's fee-shifting statute, but rather, the Court may award fees and costs under the statute if the party requesting the award shows that he obtained "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010). Nevertheless, "[e]ven under this more relaxed threshold for eligibility, [plaintiffs] must demonstrate [their] entitlement to attorney's fees." *Geiger v. Pfizer, Inc.*, 13-3519, 2013 WL 5911993, at *2 (6th Cir. Nov. 5, 2013). In exercising its discretion as to whether to award fees under § 1132(g), this Court is to consider the following five factors established by the Sixth Circuit in *Sec'y of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting the fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 669. "No single factor is determinative." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006).

3

## BACKGROUND

The Report first concludes that there is no question that Plaintiffs have achieved some success on the merits. Report & Recommendation Plaintiffs' Mot. for Attorney Fees, ("Report") 5, ECF No. 167. The Report notes that Plaintiffs were able to persuade the Court that the plan administrator's characterization of ABA therapy as "experimental or investigative" as applied to the claims of the class members is arbitrary and capricious and should not be upheld under ERISA. *Id.* at 5. The Report explained that the Court reversed the plan administrator's decision and ordered that the class members' claims for coverage of ABA therapy be remanded to BCBS for readministration consistent with the Opinion and Order. *Id.* The Report disagreed with BCBS' argument that an award of fees and costs is premature because the parties do not yet know the number of class members and how many are entitled to relief, explaining that courts within the Sixth Circuit have consistently held that a remand to the plan administrator constitutes a substantial success on the merits. *Id.* at 6.

The Report proceeds to analyze the *King* factors, noting that the parties did not dispute that the second and fourth factors were present. *Id.* at 6-7. The Report concludes that the Court's finding that BCBS' denial of benefits was arbitrary and capricious suggests that BCBS acted with culpability in denying benefits for ABA therapy. *Id.* at 7-10. The Report also finds that an imposition of attorney's fees and costs in the instant case will serve to deter other plan administrators from implementing internally inconsistent and ambiguous policies that are not properly supported by record evidence. *Id.* at 10. In addition, the Report determines that Plaintiffs' case has relatively more merit than BCBS' because Plaintiffs overcame the arbitrary and capricious standard of review. *Id.* at 11-12.

4

Accordingly, the Report concludes that, based on the *King* factors, Plaintiffs are entitled to an award of attorney's fees and costs. *Id.* at 12.

Plaintiffs request fees in the amount of $829,561. *Id.* In determining reasonable hourly rates, the Report first notes that such a rate is calculated according to the prevailing market rates in the relevant community, which, in the case at bar, is the Eastern District of Michigan. *Id.* at 13-15. Mr. Mantese claims hourly rates of $500 and his partners claim rates of $400, which the Report points out are in the 95th percentile of prevailing market rates for attorneys with similar experience. *Id.* at 16. The Report also considers that the Michigan State Bar Survey shows that the 75th percentile hourly rate for a managing partner is $315, and is $350 for equity and non-equity partners. *Id.* at 17. The State Bar Survey shows that the 75th percentile hourly rate for attorneys with between 16 and 35 years of experience is $300 per hour and the 95th percentile rate is $425 to $450 per hour. *Id.* In addition, the Report notes that the 75th percentile hourly rate for attorneys practicing consumer law is $350 and is $300 for those practicing insurance law. *Id.* Considering those factors, the Report concludes that $425.00 is a reasonable attorney fee for hours submitted by Mr. Mantese and $350.00 per hour is a reasonable fee for his law partners. *Id.* at 16.

Mr. Conway, a sole practitioner, claims a rate of $400 per hour. *Id.* The Report considered that the 75th percentile hourly rate for sole practitioners is $250 and the 95th percentile rate is $350 according to the State Bar Survey, and that, for attorneys with his level of experience, 16 to 25 years, the 75th percentile hourly rate is $300 and the 95th percentile hourly rate is $450. *Id.* As a result, the Report finds that $350 per hour is a reasonable hourly rate for Mr. Conway. *Id.* at 17-18.

5

The associates claim a $310 hourly rate, regardless of experience level, which is at the 95th percentile. *Id.* at 18. The Report notes that Plaintiffs did not submit any information regarding their experience level or years in practice. *Id.* BCBS sought to reduce their rates to the average rate, which is $203 per hour, and the Report states that the 75th percentile rate is $228. *Id.* at 16. The Report suggests that $250 per hour is a reasonable rate for the associates. *Id.* at 18-19.

The Report then turns to assess the number of hours billed, which Plaintiffs assert is 2243.5. *Id.* at 19. The Report explains that the billing entries submitted by Plaintiffs contain numerous instances of block billing in which all work by a time keeper performed on a particular date is included without specifying how much time was allotted to each individual task. *Id.* at 24. In addition, the Report points out that the billing records contain numerous vague time entries, generally referring to tasks, meetings, or communications without any indication of their general subject matter, number, or other justification. *Id.* The Report determines that such time entries do not provide sufficient detail regarding the task performed. *Id.* at 24-25. In light of Plaintiffs' burden of production, the block billing, the vague entries, and insufficient documentation, the Report concludes that the total fee request be reduced by five percent. *Id.* at 25.

The Mantese Firm bills in quarter-hour increments and the Conway Firm bills in tenth of an hour increments. *Id.* at 25-26. BCBS asserted that the fees should be reduced because the larger billing increments likely led to overbilling in many instances. *Id.* at 26. The Report concludes that the billing increments are not unreasonable and rejects BCBS' request for a reduction in fees. *Id.* at 27.

The Report next addresses BCBS' concerns about billing for administrative or non-compensable task and excessive and duplicative billing. *Id.* The Report points to two instances presented by BCBS in which the billing records show multiple attorneys engaged in the same tasks with no indication of the specific contribution each lawyer made beyond simply reviewing another attorney's work. *Id.* at 31. The magistrate judge also notes, that, based on his review of BCBS' spreadsheet of objections to the billing records, five attorneys billed approximately 27 hours working on Plaintiffs' response to a motion for reconsideration. *Id.* at 32. The Report concludes that attorney time billed for "telephone call for client" and attorney travel time is compensable, but attorney time for clerical tasks such as "file organization" and "proofread correspondence and filing" is not compensable and fees for such time should be excluded. *Id.* at 33. As a result, the Report recommends excluding the following time entries:

- 7/18/11 - SRP - 0.75 hours - Retrieved documents from Wayne Library

- 1/2/11 - ZMK - 1.0 hours - File organization for case

- 2/8/11 - ZMK - 2.0 hours - File organization for case

- 2/16/11 - ZMK - 2.0 hours - Continue and complete file organization

- 8/13/12 - TMD - 1.0 hours - Proofread correspondence and filing.

*Id.* at 33-34. The Report concludes that the time the attorneys spent on press releases was minimal and will not be excluded. *Id.* at 34. In addition, the Report concludes that the time entries in which (1) six attorneys billed more than 35 hours for Plaintiffs' motion for summary judgment from July 18, 2011 to July 21, 2011, (2) five attorneys billed more than 27 hours for Plaintiffs' response to BCBS' motion for reconsideration from July 30, 2011 through August 2, 2011, and (3) billing more than 53 hours for preparation for a hearing

7

from June 8, 2011 through June 23, 2011, all of which were identified in BCBS' spreadsheet of objections to Plaintiffs' billing records, are excessive and unreasonable, and, therefore, their amounts should be reduced by 25 percent. *Id.* at 34.

The Report declines to reduce the fee award because Plaintiffs achieved only "insignificant results," as urged by BCBS, because Plaintiffs did obtain a recovery for the class. *Id.* at 34-36. On the other hand, the Report rejects Plaintiffs' request for a fee enhancement, explaining that it is not necessary to enhance the fee because the lodestar calculation adequately compensates Plaintiffs for the risks inherent in this type of litigation and Plaintiffs have failed to establish that the case is rare or exceptional requiring an enhancement. *Id.* at 37.

The Report next considers Plaintiffs' request of $10,049.12 in costs. *Id.* at 38. The Report reviews decisions from other jurisdictions which support the view that costs under ERISA include nontaxable costs as long as they are reasonable out-of-pocket expenses incurred by the attorney that are normally charged to a fee-paying client in the course of providing legal services. *Id.* at 40. The magistrate judge states that, despite authority to the contrary, he is more persuaded by those courts that allow the recovery of costs in addition to those taxable under § 1920. *Id.* at 41. Therefore, the Report concludes that Plaintiffs' claimed telephone, postage, facsimile and travel costs should be allowed, but their claimed costs for meals and press releases should not be allowed since Plaintiffs have not established that these costs would normally be charged to the fee-paying client *Id.* at 42.

The Report addresses BCBS' argument that the costs for copying charges in particular should be reduced because they are insufficiently detailed. *Id.* The Report notes that copying costs are taxable under § 1920(4) provided that they are necessarily obtained

for use in the case. *Id.* at 43. The magistrate judge explains that, as a practical matter, it would be difficult to document for what purpose every photocopy made in the course of pursuing a lawsuit was used. *Id.* Nevertheless, recognizing that documentation was lacking to some degree as to the purpose of the copies, the Report recommends a ten percent reduction in the amount requested for copies. *Id.* at 44. The Report also reduces the copying costs to $0.10 per copy, which is considered a reasonable rate. *Id.*

Finally, the Report considers BCBS' challenge to the costs of computer research. *Id.* The magistrate judge believes that those judges who have awarded the costs of computerized research are in the majority and the reasons for doing so are well-founded. As a result, the Report recommends awards for such costs, which are reasonable given the length and complexity of the litigation. *Id.* at 45.

The Report requires Plaintiffs to recalculate the amount of attorneys's fees and costs sought in accordance with the Report and resubmit their adjusted final requests by February 20, 2014, a requirement with which Plaintiffs have since complied. *Id.* at 45-46.

**DISCUSSION**

BCBS made 11 objections to the Report which will be addressed in turn.

I.   Ripeness

BCBS argues that it was error for the Report to find that an award of fees and costs is not premature because the most important factor in determining the amount of the fee award is the degree of the plaintiff's success. BCBS maintains that the final amount of class recovery is still unknown.

"[A] fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)." *Hardt*, 560 U.S. at 255 (internal quotation

omitted). "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question of whether a particular party's success was substantial or occurred on a central issue." *Id.* (internal quotations omitted). In *Hardt*, the Supreme Court found that a court order remanding an ERISA claim for further consideration can constitute some success on the merits, although the Court expressly left open the issue of whether a remand order without more constitutes some success on the merits. *Id.* at 255-56. But "[i]n the Sixth Circuit, a remand, alone, constitutes 'some success on the merits' that makes an award of attorney's fees and costs available under § 1132(g)(1)." *Thies v. Life Ins. Co. of N. Am.*, 839 F. Supp. 2d 886, 890 (W.D. Ky. 2012).

BCBS correctly notes that *Hardt* is different from the instant case because, there, the motion for attorney's fees was made after the plan administrator readministered the claims. "However, nothing in *Hardt* precludes an award of attorney's fees where a district court remands to the plan administrator . . . where the plan administrator has not yet awarded benefits." *Blajel v. Sedgwick Claims Mgmt. Servs., Inc.*, 09-cv-13232, 2010 WL 3855239, at *4 (E.D. Mich. Sept. 28, 2010). Accordingly, "it is appropriate to rule on Plaintiff's Motion for Attorney's Fees even though Plaintiff has presently only secured a remand to the Plan Administrator." *Id.* Thus, BCBS' objection on this ground will be overruled.[1]

---

[1] *Hensley v. Eckerhart*, 461 U.S. 424 (1983), a case involving determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1983, on which Plaintiffs rely for the proposition that the inquiry regarding the extent of success and the amount of the fee award "does not end with a finding that the plaintiff obtained significant relief," *id.* at 440, is not applicable to the threshold determination of finding some degree of success on the merits for an award of attorney's fees under § 1132(g).

10

II.   Hourly Rates

BCBS next argues that the Report recommends billing rates that are excessive and without justification. In particular, BCBS contends that the Report does not explain why the rates for all the attorneys have been determined to be so high.

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). The "lodestar" method is the "proper method for determining the amount of reasonable attorney's fees." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (internal citations omitted). This approach involves two steps. First, the court calculates the "lodestar" by multiplying "the hours spent on a case by a reasonable hourly rate of compensation for each attorney involved." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). Second, the court "may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Adlock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

A reasonable hourly rate is generally calculated according to the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "The 'prevailing market rate' is that rate which lawyers of comparable skill and experience can expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area where he maintains his office. . . ." *Adcock-Ladd*, 227 F.3d at 350. "The appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to

11

encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). BCBS does not dispute that the relevant community is the Eastern District of Michigan.

Prevailing attorneys must justify the reasonableness of a requested fee award. *Blum*, 465 U.S. at 896 n.11. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence -in addition to the attorney's own affidavits- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*

The Magistrate Judge concludes that $425 per hour is a reasonable rate for Mr. Mantese. BCBS asserts that the magistrate judge disregards the State Bar Survey figures and governing law because he awards Mr. Mantese a rate at the 95th percentile of that survey. BCBS further states that the magistrate judge does not explain why the 75th percentile rate is insufficient. Nonetheless, as Plaintiffs explain, such a high rate for lead counsel is warranted by Mr. Mantese's qualifications and experience. Courts in the Eastern District of Michigan have recently awarded rates as high as $475 per hour for lead and experienced class counsel in ERISA health benefit class actions. *See Hargrove v. Eaglepicher Corp.*, No. 10-cv-10946, 2012 WL 1668152, at*7 (E.D. Mich. May 10, 2012) (collecting cases). BCBS also contests awarding a higher rate to Mr. Mantese than to the other partners at his firm. That rate, however, is justified by Mr. Mantese's experience and because he is lead counsel.

BCBS argues that Mr. Mantese's law partners are not entitled to the 75th percentile rate of $350 per hour. BCBS contends that Plaintiffs provided no evidence to justify their

12

claimed billing rates, and, accordingly, they should receive at most, $282 per hour, which is the average rate for equity partners. The Report acknowledges that Plaintiffs did not provide information regarding their experience. Nevertheless, the award is supported by the complexity of the case and the Mantese firm's experience in handling matters of this sort.

BCBS asserts that the Report fails to explain why Mr. Conway is entitled to $350 per hour and urges that $300 per hour is a more than adequate rate. Again, the rate is adequately supported by the nature of the case as well as by Mr. Conway's experience.

BCBS contends that the Report fails to explain its recommended rate of $250 per hour for all of Mr. Mantese's associates. As the Report notes, Plaintiffs did not present the magistrate judge with information about their individual experience levels even though they had the opportunity to do so. Still, the rate, which is above the 75th percentile rate for associates, is justified by the firm's experience in this type of case and the difficulty of the case itself.

III.   Consideration of BCBS' Spreadsheet and Supplemental Attorney's Fees

BCBS points to the Report's statement that "BCBS asserts that $113,802.50 of the Mantese Firm attorney's fees (through September 2011) and $187,994.00 of the Conway Firm attorney's fees, or a total of $301,796.50, should not be allowed for the reasons stated in their response." Report 20. BCBS notes that the Report fails to mention that, after Plaintiffs submitted an additional one and a half years of billing records for the Mantese Firm, BCBS submitted a revised spreadsheet, demonstrating that at least $641,269.00 should not be allowed. Although the Report may have misstated the exact amount of fees that BCBS challenged, the magistrate judge is clearly well-versed in BCBS' legal position.

13

In light of the entire record, including the spreadsheet that BCBS contends was not reviewed, the magistrate judge's decision is appropriate.

BCBS also criticizes the Report's order that Plaintiffs submit an updated fee demand figure, with which Plaintiffs have already complied pending the Court's ruling on the Report and Recommendation. BCBS contends that these additional submissions are inappropriate and prejudicial. Nevertheless, "[s]upplemental attorneys' fees can be awarded in the same manner as attorneys' fees." *McCombs v. Meijer Inc.*, 395 F.3d 346, 361 (6th Cir. 2005). "This Court also retains jurisdiction over any additional fee petitions in otherwise obtaining or defending the judgment." *Int'l Union, United Auto., Aerospace, & Agricultural Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2007 WL 4571648, at *1 (E.D. Mich. Dec. 27, 2007). Accordingly, Plaintiffs may make new, supplemental motions for attorney's fees.

BCBS seeks an opportunity to object to the adjusted fee and cost figure and to any records Plaintiffs will submit. BCBS envisions objecting to the updated fee demand that will be considered by the magistrate judge. This Court sees the possibility that this will lead to an endless dispute regarding attorney's fees that will lead Plaintiffs to continue to generate fees that BCBS will challenge. Upon the entry of this order, therefore, the magistrate judge will merely consider and calculate the award of attorney's fees based on this order. BCBS will make no more new filings with the magistrate judge, but it will have the opportunity to file objections to the order before a final award is approved by this Court.

IV. Vague and Block Billed Entries

The Report imposes a 5 percent reduction for numerous entries of block billing and those with vague time periods in the record. Plaintiffs argue that because the Report cites

cases that imposed a 10 percent reduction for similar deficiencies, the reduction should be increased to at least 10 percent.

"When confronted with a request for the award of attorney's fees in the face of inadequate billing records, courts in the Sixth Circuit often apply across-the-board fee reductions." *Grant v. Shaw Envtl., Inc.*, No. 08-cv-350, 2013 WL 1305599, at *7 (E.D. Tenn. June 12, 2013). BCBS puts forth no case that requires the reduction to be 10 percent or greater. The Report properly notes the magistrate judge's discretion in determining the amount of the reduction. The Report also describes the vague and block billed entries it opposes in great detail. The Court agrees that the reduction is resonable based on the records presented by Plaintiffs and will deny BCBS' objection.

V.    Time Increments

The Report accepts the Mantese Firm's billing in quarter-hour increments and the Conway Firm's billing in tenth of an hour increments, determining that quarter-hour increments are not unreasonable in the instant case. BCBS objects that all time should be reduced to tenth of an hour increments because the Report has given no basis for its decision and the time records demonstrate that the reduction is required.

"Whether quarter-hour billing is reasonable is a matter within the discretion of the district court." *Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013). Some district courts do not reduce the requested fee awards when it is the regular practice of the law firm to bill in quarter-hour increments. *See Does I, II, III v. Dist. of Columbia,* 448 F. Supp. 2d 137, 142 (D.D.C. 2006) (collecting cases). "It would be inappropriate judicial micro-management to mandate billing practices by reducing a private firm's properly and adequately documented attorney's fees from the standard billing increment employed by

15

the firm." *Causeway Med. Suite v. Foster*, No. 99-509, 2000 WL 533515, at *3 (E.D. La. May 2, 2000). Accordingly, it is reasonable to accept the Mantese Firm's regular practice of billing in quarter-hours.

BCBS provides no more than speculation that the Mantese Firm records contain numerous instances of recording a quarter-hour for task that likely took a few minutes. The same is true of BCBS' criticism that Mr. Conway never recorded less than 0.3 hours for any task.

BCBS asks that the Court perform the calculation that the district court performed in *Yellow Book USA Inc., v. Brandeberry,* No. 10-cv-025, 2013 WL 2319142 (S.D. Oh. May 28, 2013),[2] whereby the court arrived at a 5 percent reduction after adding the number of time entries, multiplying that number by 9, which constitutes the difference in minutes between a quarter-hour increment and a tenth-hour increment, and then calculating the percentage of total hours billed. *Id.* at *8. The Court declines to make such a calculation because it finds that the quarter-hour billing is reasonable.

Thus, BCBS' objection regarding quarter-hour billing is denied.

VI.   Reductions for Excessive Billing and Overstaffing

The Report concludes that the time entries in which (1) six attorneys billed more than 35 hours for Plaintiffs' motion for summary judgment from July 18, 2011 to July 21, 2011, (2) five attorneys billed more than 27 hours for Plaintiffs' response to BCBS' motion for reconsideration from July 30, 2011 through August 2, 2011, and (3) attorneys billed more than 53 hours for preparation for a hearing from June 8, 2011 through June 23, 2011, all

---

[2] The Sixth Circuit remanded *Yellowbook* to the district court for a partial grant of fees after it reversed the district court's refusal to grant any attorney's fees. *Yellowbook*, 708 F.3d at 841.

16

of which were identified in BCBS' spreadsheet of objections to Plaintiffs' billing records, are excessive and unreasonable, and, therefore, their amounts should be reduced by 25 percent. Report at 34.

BCBS argues that the Report erroneously relies only on examples of overbilled tasks that were made for illustrative purposes in its briefing because of space constraints and should have scrutinized the time records more rigorously. BCBS also contends that Report should have analyzed its request that time billed for discovery be disallowed before rejecting it. The Report and a review of the record indicate that the magistrate judge has carefully considered all arguments regarding the allegations of overbilling. The Report simply reflects that the magistrate judge does not find BCBS' arguments persuasive rather than that he failed to rigorously scrutinize the record. The Court agrees that the reduction as made by the magistrate is reasonable.

BCBS also argues that the record shows an "inference that plaintiff's counsel improperly recorded the case time actually spent on task for one or more [] other cases." Objections 13. This argument, based on similar dates and amounts of time billed to other similar cases litigated by Plaintiffs' counsel, is speculative in light of Plaintiffs' reasonable argument that similar tasks can be done on similar pending cases on the same day to increase efficiency.

In addition, BCBS contends that it is disingenuous that counsel spent hours researching issues on which they were supposedly experts.  Nevertheless, the instant case is a complex ERISA class action. "This argument seems to suggest that great attorneys do not have to work hard. In the Court's experience, the exact opposite is true. Most great attorneys realize that to achieve a goal, much hard work and toil is necessary, especially

17

when entering uncharted legal territory." *Cmtys. for Equity v. Michigan High School Athletic Ass'n.*, No. 98-cv-479, 2008 WL 906031, at *15 (W.D. Mich. Mar. 31, 2008). "Had less-experienced counsel handled this case, it would have greatly increased the number of hours that would have been billed." *Id.* at 14. BCBS' "suggestion that this case could have been litigated as successfully had it been less well staffed bears little relation to how extensively this case was actually litigated." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999).

Finally, BCBS argues that the 25 percent reduction for each task, rather than a global reduction in fees or a determination of a reasonable amount of time for each specific task, is arbitrary and inadequate. Although BCBS points to district courts that have taken each of the proposed routes, it has not presented any authority that the magistrate judge's decision here is improper or outside of his discretion. Thus, because the Court finds that the magistrate judge's conclusions regarding overbilling are reasonable, they will be adopted.

VII.   Non-Compensable Tasks

The Report concludes that attorney time billed for "telephone call for client" and attorney travel time is compensable, but attorney time for clerical tasks such as "file organization" and "proofread correspondence and filing" is not compensable and that fees for such time should be excluded. Report at 33. As a result, the Report recommends excluding the time entries labeled "Retrieved documents from Wayne Library," "File organization for case," "Continue and complete file organization," and "Proofread correspondence and filing." *Id.* at 33-4. The Report also concludes that the time the attorneys spent on press releases was minimal and will not be excluded. *Id.* at 34. BCBS

objects that the attorney travel time and time spent on press releases should not be recoverable.

"'[T]ravel time is ordinarily billable and therefore appropriately included in an award of attorney's fees . . . 'when the requested time is reasonable.'" *Caudill v. Sears Transition Pay Plan*, No. 06-cv-12866, 2011 WL 1595044, at *15 (E.D. Mich. April 26, 2011) (quoting *Smith v. Columbia Gas of Ohio Grp. Med. Benefit Plan*, No. 06-cv-00708, 2010 WL 319953, at *8 (S.D. Ohio Jan. 20, 2010)). BCBS challenges time Mr. Conway billed to travel to and from Lansing to attend a Michigan State Senate hearing on bills related to mandated coverage for the treatment of autism. BCBS contends that the attendance was not necessary to the case, having BCBS pay for travel from metropolitan Detroit to Lansing is unreasonable, and there is no justification for the amount of time spent. Plaintiffs have explained that the purpose of the travel was reasonable because BCBS moved for decertification of the class as moot based on the proposed legislation. The Court finds that reasonable travel time has been requested, particularly as Plaintiffs note that they have reduced the requested time to four hours in their adjusted request made in response to the Report.

"Some courts have found fees related to press relations reimbursable to the extent the hours expended 'were reasonably necessary for the proper prosecution of the lawsuit,'" meaning "only those discussions with the press that contributed to communication with the class in a *meaningful* way and were necessary for the prosecution of the suit." *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 941 (E.D. Mich. 2005) (quoting *Keyes v. Sch. Dist. No. 1, Denver, Colorado*, 439 F. Supp. 393, 408 (D. Colo. 1977)). Plaintiffs have made such a showing in their fee request, which justifies the magistrate judge's decision to award fees

19

on this basis. Nevertheless, BCBS is no longer aggrieved by this particular fee request since Plaintiffs' counsel voluntarily excluded all fees incurred on press releases and media relations in their adjusted request made in response to the Report.

Therefore, the Court will deny BCBS' objection regarding non-compensable tasks.

VIII.   <u>Other Bases for Reductions</u>

BCBS objects that the Report did not thoroughly consider the two detailed spreadsheets it submitted describing each improper time entry. BCBS contends that it was improper for the Report to refuse to deduct time when Plaintiffs did not specifically explain why each of the challenged time entries were reasonable. BCBS, however, does not go into detail to explain why each of the entries is unreasonable except for the conclusory statements in the spreadsheets, such as "Excessive." As discussed above, having considered the entire record, the Court finds that the fee awarded by the magistrate judge is reasonable.

In its objection brief, BCBS provides detail about only one more allegedly overlooked argument: that the request of 176.8 hours for the fee motion is excessive. BCBS relies on the general rule the Sixth Circuit set forth in *Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir. 1986), whereby "[i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial." *Id.* at 151. BCBS claims that the total request at bar constitutes more than eight percent of the total fees and should be limited to three percent.

In *Klein v. Cent. States, Southeast and Southwest Areas Health & Welfare Plan*, 621 F. Supp. 2d 537 (N.D. Ohio 2009), the district court found that ERISA claims present

unusual circumstances that make *Coulter* inapplicable. *Id.* at 544-45. The court reasoned that the limitation should not apply to cases in which most of an attorney's work occurs in administrative proceedings before the case reaches the district court, which disadvantages plaintiffs' counsel. *Id.* Accordingly, the refusal to limit percentage of time devoted to the fee request to three percent of the total is not unreasonable. It also cannot be understated how vigorous BCBS' challenge to the fee award has been, which is made obvious by the extensive briefing before the magistrate judge, the numerous objections to the Report, and, indeed, the length of this order adopting the Report. "It is reasonable to expect that Plaintiff's counsel would have to spend more than the normally anticipated amount of time to respond to this lengthy, broad-based attack on the request for [] fees." *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 870, 874 (S.D. Ohio 2008). Accordingly, BCBS' objection is denied.

IX.   <u>Insignificant Results</u>

BCBS argues that Plaintiffs' fee award should be reduced because it contends that Plaintiffs achieved only "insignificant results." As the Report explains, the results in this case are not insignificant. The Court declared BCBS' policy arbitrary and capricious and ordered Plaintiffs' claims to be remanded to BCBS for redetermination, which is actual relief on the merits for Plaintiffs. Plaintiffs also note that, a little more than two weeks after Judgement was entered in this case, BCBS reversed its longstanding policy that ABA was experimental and issued a new policy statement taking the position that the effectiveness of ABA therapy has been established.

BCBS contends that success was limited because the Court decertified the majority of Plaintiffs' class. The entire class, however, was not decertified and the remaining class

21

members received the result of redetermination. As discussed in Section I *infra*, attorney's fees may be awarded when there is some success on the merits. As a result, BCBS is incorrect in stating that the magistrate judge erred when he relied on *Farrar v. Hobby*, 506 U.S. 103  (1992) for the proposition that a Plaintiff prevails "when the actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111-12.

The reasoning set forth on this issue in *Heath v. Metro. Life Ins. Co.*, No. 09-cv-0138, 2011 WL 4005409 (M.D. Tenn. Sept. 8, 2011) is directly applicable to the instant case: "It would seem absurd to classify the [] decision to remand the case back to Defendant for further review as 'limited success' in this situation. . . . It cannot be that an inadequate review that produces an insufficient basis for a benefits decision by the insurer or the court can  result in a fee reduction due to the plaintiff's limited success in court." *Id.* at *11. *See Cockrell v. Hartford Life & Accident Ins. Co.*, No. 11-2149, 2013 WL 2147454, at *7 (W.D. Tenn. May 15, 2013) ("Although this Court did not grant Cockrell's request for disability benefits, it did find that Hartford's denial of benefits was arbitrary and capricious. . . . Hartford may not benefit from a reduction in attorney's fee award when it was Hartford's inadequate and cursory review that prompted this litigation. Cockrell, like the plaintiff in *Heath*, has achived a level of success in security a remand of her case that entitles her to an undiluted award of attorney's fees.").

Furthermore, BCBS' statement that class recovery in the case will likely benefit seven people at the amount of $200,000 is speculative. All the members of the potential class, which consists of 120 members, benefitted by having their claims remanded whether or not BCBS determines they are entitled to benefits after readministration.

The fact that the class size certified is smaller than the class size plaintiffs originally sought is of no moment since Plaintiffs were successful. *See Caudill*, 2011 WL 1595044, at \*16. Again, BCBS' attempts to distinguish *Caudill* from the instant case because it involved a $2.6 million money judgment for which the amount of attorney's fees was a fraction is flawed because it is based on a speculative and self-serving characterization of the monetary amount of benefits it may ultimately disperse to class members. BCBS' request that the fee award should be limited to the 1/3 typical percentage fee in private contingency arrangements has no basis in law or logic when applied to the rationale of the ERISA fee-shifting statute. Moreover, it is of no consequence that the Court approved a negotiated settlement of a much lower amount between Plaintiff's counsel and BCBS in an earlier case involving similar claims. *See Johns v. Blue Cross Blue Shield of Michigan*, No. 08-cv-12272 (E.D. Mich.).

BCBS also claims that any hours spent opposing BCBS' post-judgment proposed letter to the potential class members should be disallowed because BCBS prevailed on that motion and that Plaintiffs should not be able to recover any time for compiling the proposed administrative record which the Court ultimately struck. Nonetheless, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in the pursuit of success at the point in time when the work was performed." *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). Plaintiffs have met the standard and their fee request is appropriate. As a result, the Court will deny BCBS' objection.

X.   Awarding Costs

BCBS challenges the Report's recommendation to award Plaintiffs costs in addition to those listed in 28 U.S.C. § 1920, which enumerates the type of costs that a judge or clerk of any court may tax, arguing that it is not possible to do so.

As with attorney's fees, the Court has broad discretion to award costs to parties in ERISA action who have shown some degree of success on the merits. *See* 29 U.S.C.   § 1132(g)(1) (providing that the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party."). Civil Rule 54(d)(1) provides that "unless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Furthermore, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" upon motion under Civil Rule 54(d)(2), subject to Civil Rule 23(h) procedures. Fed. R. Civ. P. 23(h). ERISA is silent on those costs other than attorney's fees that the Court may tax under the authority of Civil Rule 54(d).

BCBS is correct that some district courts in the Sixth Circuit have not permitted recovery for costs that are not allowed by § 1920, although the Sixth Circuit itself has not ruled on the issue.[3] *See Elec. Energy, Inc. v. Lambert*, No. 10-2629, 2011 WL 1883986, at *6 (W.D. Tenn. May 17, 2011); *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1145 (S.D. Ohio 1997). The Report properly relies on decisions by other district courts in the Sixth Circuit that have awarded such costs. Notably, the district court awarded such costs in

---

[3] BCBS is right that the Sixth Circuit has held that district courts may not award costs not authorized by the statute and did not allow such recovery in a civil rights case pursuant to 42 U.S.C. § 1988. *King v. Gowdy*, 208 F. App'x 389, 391 (6th Cir. 2008). It has never made such a determination, however, in an ERISA case.

*Thies v. Life Ins. Co. of North Am.*, 839 F. Supp. 2d 886 (W.D. Ky. 2012), determinng, "The Defendant's arguments against costs are not persuasive because it has not pointed to any authority that would lead the Court to find that the express language of 29 U.S.C. § 1132(g)(1), which allows the recovery of costs in the Court's discretion, is limited by 28 U.S.C. § 1920." *Id.* at 896. *See also Moore v. Menasha Corp.*, No. 08-cv-1167, 2013 WL 308960, at *5-*6 (W.D. Mich. Jan. 25, 2013) (ERISA action awarding, without explanation of costs allowed under § 1920, costs for computerized research, telephone, and other expenses not allowed under § 1920); *Hargrove*, 2012 WL 1668152, at *2; *Int'l Union*, 2007 WL 4571648, at *1 ("Class counsel are entitled to fees and nontaxable costs pursuant to ERISA for their work since July 31, 2006.").

The Court agrees with the magistrate judge's reasoning and that of the courts cited above that the award of costs is appropriate. Thus, BCBS' objection is denied.

## XI.   Reduction in Costs

BCBS' final objection is that the recommended reduction of 10 percent in the request for copying costs should be increased to 80% because, in *Moore,* 2013 WL 308960, the Court made such a reduction when "Plaintiffs provide[d] no detail whatsoever as to what the[] reproduciton costs entailed." *Id.* at *5. Nevertheless, the recommended 10 percent reduction is reasonable. The Report explains that, as a practical matter it would be difficult to document for what purpose every photocopy made in the course of pursuing a lawsuit of this nature was used. As a result, Plaintiffs need not be punished for failing to document the purpose for the thousands of photocopies they made. Even so, a 10 percent reduction is reasonable for the instances, such as those identified in the Report, in which Plaintiffs

25

made a significant number of copies in a short time period and did not record their purpose. Accordingly, the objection is denied.

**CONCLUSION**

The magistrate judge has properly determined that an award of fees and costs is not premature. The hourly rates recommended by the Report are all reasonable. In light of the entire record, including the spreadsheet that BCBS contends was not reviewed, the magistrate judge's decision is appropriate regarding hours. The 5 percent reduction for numerous entries of block billing and numerous vague time entries in the record is reasonable. The Report appropriately accepts both the Mantese Firm's and the Conway Firm's billing increments. The magistrate judge has made a reasonable determination regarding reductions for excessive billing. Both the travel time and fees related to press relations are compensable, and there is no longer a dispute regarding the press relations fees since Plaintiffs have voluntarily withdrawn that request. BCBS' objection that the magistrate judge overlooked its other arguments is baseless.

Furthermore, there is no basis to reduce the fee award for "insignificant results" because the class members benefitted from readministration of their claims even though Plaintiffs did not succeed in certifying the entire class they put forward.

Moreover, the decision to award costs is appropriate. In addition, the 10 percent reduction in reduction for costs related to copying is reasonable.

Therefore, the Court will adopt the Report as a whole and deny all of BCBS' objections. The Court accepts the recommendation that the magistrate judge will recommend a final award based on the adjusted final request that Plaintiffs have already submitted. *See* ECF no. 176). Once the magistrate judge recommends an award, BCBS

26

may object to the recommendation. To avoid the endless cycle of challenges to fee awards alluded to above, Plaintiffs must file any additional requests for attorney's fees covering a period beyond that discussed in the Report by motions for supplemental requests which the Court will address separately from this initial award.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that BCBS' objection (document no. 171) is **OVERRULED** and the magistrate judge's Report (document no. 167) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for attorney's fees and costs (document no. 128) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that the matter is referred to the magistrate judge to recommend a fee award consistent with this order.

**IT IS FURTHER ORDERED** that Plaintiffs must file any additional requests for attorney's fees covering a period beyond that discussed in the Report by separate motions for supplemental requests for attorney's fees and costs.

**SO ORDERED**.


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2014, by electronic and/or ordinary mail.


s/Carol Cohron
Case Manager